COMMONWEALTH vs. ONE 1987 MERCURY COUGAR
AUTOMOBILE.

Middlesex. September 9, 1992. - October 7, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Forfeiture Proceeding. Practice, Civil*, Forfeiture proceeding. *Controlled Substances. Motor Vehicle*, Forfeiture. *Words*, "Otherwise facilitate."

Knowingly conveying a person who plans to participate in a drug transaction to the location of that transaction is "otherwise facilitat[ing]" the distribution of a controlled substance within the meaning of G. L. c. 94C, § 47 (*a*) (3), and the automobile used would be subject to forfeiture under that statute. [537-538]

Discussion of the Federal forfeiture statute, 21 U.S.C. § 881, and cases interpreting it. [538-540]

In a forfeiture proceeding under G. L. c. 94C, § 47 (*a*) (3), summary judgment was correctly entered for the Commonwealth and the automobile in question ordered forfeited where there was no genuine issue of material fact with respect to the vehicle's having been knowingly used to facilitate the distribution of a controlled substance. [541]

CIVIL ACTION commenced in the Superior Court Department on December 15, 1987.

The case was heard by *James F. McHugh*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Donna J. Bertko* for the claimant.

*Walter J. Sullivan, Jr.*, Assistant Attorney General, (*R. Michael Cassidy*, Assistant Attorney General, with him) for the Commonwealth.

The claimant, pro se, submitted a brief.

NOLAN, J. This is a civil action in the nature of an equitable proceeding in rem brought by the Attorney General in the name of the Commonwealth for forfeiture of a 1987

Mercury Cougar automobile. See G. L. c. 94C, § 47 (*d*) (1990 ed.). The Commonwealth commenced this action on December 15, 1987, by filing a complaint in the Superior Court subsequent to the seizure of the automobile and the arrest of the claimant, Anthony Penta, for cocaine trafficking. The complaint sought forfeiture of the automobile on the ground that it was used in violation of G. L. c. 94C, § 47 (*a*) (3) (1990 ed.), which subjects to forfeiture "[a]ll conveyances . . . used, or intended for use, to transport, conceal, or otherwise facilitate the manufacture, dispensing, [or] distribution of . . . a controlled substance . . . ." On November 20, 1990, the Commonwealth moved for summary judgment. Then on January 31, 1991, after considering the claimant's motion in opposition, the judge granted summary judgment for the Commonwealth and ordered that the automobile be forfeited. The claimant thereafter appealed, and we transferred the case here on our own motion. We now affirm the grant of summary judgment.

The events leading to the forfeiture began in September, 1987, when Penta, the owner of the automobile in question, drove one Mueller, an agent of the State police, to a football game. During the game and on the way home, Mueller asked Penta to buy drugs for him. In October, Mueller bought two ounces of cocaine from Penta, who eventually agreed to sell eleven more ounces of cocaine to Mueller at Mueller's home on November 5, 1987.

As part of the plan for the November 5 deal, Penta promised that he would arrange with his supplier, John Mele, to have the cocaine ready for delivery on that day. The delivery would come in two installments: Penta would first deliver two ounces of cocaine to Mueller on the evening of November 4 and then the remaining nine ounces the next day. On November 4, Mueller picked up the first installment of cocaine at Penta's house; Penta then told Mueller that Mueller had to give him $11,250 the next day so that he could take the money to Mele to buy the cocaine and bring it back to Mueller's house.

On November 5, Penta drove his Mercury Cougar automobile over to Mueller's house to pick up the money. Mueller, having changed the plan, told Penta that he would not let the money leave the house without having the drugs first. After a discussion, Penta left Mueller's house, drove to Mele's house, picked up Mele, and drove back to Mueller's house. At that time surveillance officers observed the automobile stop by a Chinese restaurant near Mueller's house. Mele left the automobile and entered the restaurant. Penta, meanwhile, returned to Mueller's house.

Penta explained the latest plan to Mueller: Penta would count the money, then "beep" Mele who was waiting outside to deliver the cocaine. While Penta was counting the drug money, police entered the house and arrested Penta. Outside, Mele was also arrested, and nine ounces of cocaine was found on his person. Penta denied knowing that Mele was carrying cocaine in Penta's automobile; Mele filed an affidavit in support of Penta's assertion.

An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law. *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). The burden rests first on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Once the movant has made this showing, the burden shifts to the adverse party who must set forth specific facts showing that there is a genuine issue for trial and he may not rest upon mere allegations or denials of his pleadings. Mass. R. Civ. P. 56 (c). If the adverse party fails to allege specific details establishing a genuine issue of material fact, summary judgment will be entered in favor of the moving party. Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). See *Dawes, supra* at 554. In this case, the Commonwealth has shown that there is no genuine

issue of any material fact and that the Commonwealth is entitled to judgment as a matter of law.[1]

There is no dispute in the trial record or in the appellate briefs that the claimant, Penta, knowingly drove himself and his cocaine supplier, Mele, in the Mercury Cougar automobile to the scene of a drug transaction which Penta had planned. General Laws c. 94C, § 47 (a) (3), provides that conveyances which "transport, conceal, or *otherwise facilitate* the . . . distribution of . . . a controlled substance" shall be subject to forfeiture to the Commonwealth (emphasis added). Section 47 (c) (3) requires that the owner "knew or should have known" that the conveyance was "used in and for the business of unlawfully . . . distributing controlled substances." Therefore, if conveying the supplier and the courier to an anticipated drug deal constitutes facilitation of that drug deal, then there is no issue as to any material fact. Since Penta admits that he knowingly drove his automobile to a drug deal, the automobile would be subject to forfeiture as a matter of law.

Penta contends, however, that using an automobile, not to transport cocaine, but merely to convey parties to a drug transaction does not "otherwise facilitate" that drug transaction within the meaning of § 47 (a) (3). We find that the claimant's interpretation contradicts both the plain language of the statute and recent precedent.

It is a well-established canon of construction that, where the statutory language is clear, the courts must impart to the language its plain and ordinary meaning. *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416, 420 (1986), and cases cited. The plain and ordinary meaning is conclusive as to legislative intent in the absence of any contrary evidence such as the statute's history and purpose. *Sterilite Corp.* v. *Continental Casualty Co.*, 397 Mass. 837, 839 (1986), and cases cited. While courts should look to diction-

---

[1] It is important to note that the motion judge relied on the affidavits of Penta, Mele, and Trooper White. He also relied heavily on the admissions made by Penta during Penta's criminal trial. See Mass. R. Civ. P. 56 (c).

ary definitions and accepted meanings in other legal contexts, see *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587 (1984), their interpretations must remain faithful to the purpose and construction of the statute as a whole. See *Commissioner of Revenue* v. *Wells Yachts South, Inc.*, 406 Mass. 661, 664 (1990).

The ordinary meaning of the word "facilitate" is "[t]o free from difficulty or impediment. . . . To make easy or less difficult." Black's Law Dictionary 591 (6th ed. 1990). The ordinary meaning of "otherwise" is "[i]n a different manner . . . or in other ways." *Id.* at 1101. Therefore, the phrase "otherwise facilitate" means "to make less difficult in other ways," and § 47 (*a*) (3), may be read: "All conveyances . . . used, or intended for use, to transport, conceal, or *make less difficult in other ways* the . . . distribution of . . . a controlled substance . . ." (emphasis added). Transporting and concealing are two specific ways of facilitating drug distribution. By using the phrase "otherwise facilitate" at the end of a series describing specific means of facilitation, the Legislature meant for the language to be open-ended. The language suggests methods of facilitation *other than* transporting or concealing. Thus, it is not necessary to stretch the statutory language beyond the Legislature's intent to encompass transporting a drug supplier and a courier to a planned drug transaction. A middleman who knowingly drives the drug supplier to meet the buyer is plainly making the drug distribution easier, less difficult.

Indeed, this interpretation is consistent with the Federal forfeiture statute dealing with controlled substances, 21 U.S.C. § 881 (1988 & Supp. II 1990), upon which the Massachusetts statute was based.[2] Section 881(a)(4) subjects to forfeiture "[a]ll conveyances . . . which are used, or are in-

---

[2]The Controlled Substances Act, St. 1971, c. 1071, § 1, was approved on November 11, 1971, and is codified at G. L. c. 94C (1990 ed.). The forfeiture provision, § 47, was modeled in large part on the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881 (1988 & Supp. II 1990). Chapter 1071 repeatedly refers to its Federal counterpart.

tended for use, to transport, or *in any manner to facilitate the transportation, sale, receipt, possession, or concealment of* [controlled substances]" (emphasis added). As noted above, "otherwise" is synonymous with the phrase "in any manner."[3]

In interpreting 21 U.S.C. § 881, Federal courts have held that, even if an automobile is not used to transport drugs, it is still subject to forfeiture if there is a "sufficient nexus" between the automobile and the illegal action.[4] See, e.g., *United States v. One 1981 Datsun 280ZX*, 563 F. Supp. 470, 472-473 (E.D. Pa. 1983) (negotiating drug deal in automobile provides sufficient nexus). In fact, recent precedent illustrates that transporting the parties to a drug transaction constitutes facilitation under § 881. See *United States v. One 1979 Porsche Coupe*, 709 F.2d 1424, 1427 (11th Cir. 1983) (transported "pivotal figure" to prearranged drug transaction); *United States v. One 1979 Mercury Cougar XR-7*, 666 F.2d 228, 230 (5th Cir. 1982) (automobile used to find landing site, storage facility, and to rent another vehicle as part of drug smuggling operation); *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421, 426 (2d Cir. 1977) (transported parties to drug negotiations and place of sale). Moreover, ruling on facts strikingly similar to this case, the United States Court of Appeals for the Fifth Circuit held that transporting the drug supplier and the courier to a prearranged sale provides a sufficient nexus to subject the auto-

---

[3]In fact, the original proposed version of G. L. c. 94C included the phrase, "in any manner," from § 881. Report of the Special Commission on Drug Abuse, 1971 House Doc. No. 6180, at 99. The phrase "in any manner" was replaced with the word "otherwise" in 1971 House Doc. No. 6380.

[4]The United States Court of Appeals for the Second Circuit found that "[a]s a matter of common sense we cannot accept the concept that while the transportation of any quantity of drugs however minute is admittedly sufficient to merit the forfeiture of the vehicle, nonetheless the transportation of the trafficker to the site of the drug sale or to a prearranged meeting with a prospective customer where the sale is proposed should save the vehicle from forfeiture." *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421, 425 (2d Cir. 1977).

mobile to forfeiture. *United States* v. *One 1977 Cadillac Coupe DeVille*, 644 F.2d 500, 503 (5th Cir. 1981).

The claimant, Penta, argues that the language in § 47 (*a*) (3) resembles 49 U.S.C. app. § 781(a)(3) (1988) more than § 881. Section 781 uses the phrase "to facilitate" without the modifiers used in § 47 (*a*) (3) or § 881. Penta relies further on two Federal cases decided under § 781 which found that the "use of an automobile to commute to the scene of a crime does not justify the seizure of that automobile." *Howard* v. *United States*, 423 F.2d 1102, 1104 (9th Cir. 1970), citing *Platt* v. *United States*, 163 F.2d 165 (10th Cir. 1947). Penta's reliance, however, is misplaced.[5] First, the language in § 881 is patently closer to § 47 (*a*) (3) than is the language in § 781. Second, § 881, like § 47, is a drug control statute. Prior to the enactment of § 881, drug-related forfeitures were accomplished pursuant to § 781, the general contraband forfeiture provision. *Id*. The purpose of the broader language in § 881 was to expand the government's right of forfeiture in drug cases. See *One 1981 Datsun 280ZX*, *supra* at 473. Third, *Howard* and *Platt* are factually distinguishable from this case. In *Howard*, *supra* at 1103, the case was prosecuted on the theory that the automobile facilitated the "transportation" rather than the sale of the drugs. In *Platt*, *supra* at 167, a drug addict borrowed her mother's automobile to drive to a drug store and presented a forged prescription. In that case, the automobile was not owned by a participant in the illegal action, and the automobile did not make the illegal transaction significantly easier. Moreover, the same court in *United States* v. *One 1950 Chevrolet 4-Door Sedan*, 215 F.2d 482, 484 (10th Cir. 1954), held that using a vehicle to take the seller of marihuana, who in this case owned the vehicle, to the location of a drug transaction justified forfeiture.

---

[5]The United States Court of Appeals for the Second Circuit, for example, has expressly distinguished *Howard* v. *United States*, 423 F.2d 1102 (9th Cir. 1970), and *Platt* v. *United States*, 163 F.2d 165 (10th Cir. 1947), from § 881 cases. *United States* v. *One Cadillac Eldorado Sedan*, *supra*.

These cases highlight a concern that drug-related forfeiture laws will be used to take away the property of innocent third parties. Such fears, in this case, are ungrounded. This is not the case where the owner of the automobile was an unwitting participant. Indeed, we have held previously that "the mere personal possession of a controlled substance by one traveling in a vehicle would not constitute sufficient grounds under the statute for the forfeiture of the vehicle." *Commonwealth* v. *One 1969 Mercedes-Benz Automobile*, 375 Mass. 663, 667 (1978). By contrast, Penta admits not only that he knowingly drove to a pre-arranged drug transaction at which he planned to purchase cocaine and deliver it by automobile to the buyer, see *United States* v. *Fleming*, 677 F.2d 602, 610 (7th Cir. 1982) (owner of vehicle drove to codefendant's house to purchase cocaine), but he also knowingly drove the "pivotal figure" in the drug deal, Mele, to the location of the drug deal. See *United States* v. *One 1979 Porsche Coupe*, *supra* at 1427. Therefore, there is a demonstrated, substantial nexus between the automobile and the illegal drug transaction.

The line of Federal cases under § 881 comports with our recent decisions under § 47. See, e.g., *Commonwealth* v. *Seven Thousand Two Hundred Forty-six Dollars*, 404 Mass. 763, 765 (1989) ("some demonstrable nexus" must be shown between drugs and the property seized). Therefore, we hold that (1) conveying a person who plans to participate in a drug transaction to the location of that drug transaction facilitates the distribution of a controlled substance within the meaning of G. L. c. 94C, § 47 (*a*) (3); and (2) because there is no dispute that the parties to a prearranged drug transaction were knowingly driven to the location of that drug transaction, the automobile is subject to forfeiture as a matter of law.

*Judgment affirmed.*