ANDERSON STREET ASSOCIATES *vs.* CITY OF BOSTON
& another[1]
(and a companion case[2]).

Suffolk. October 5, 2004. - November 17, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Urban Renewal. Redevelopment of Land. Redevelopment Authority. Taxation,*
Urban redevelopment corporation, Excise, Exemption, Real estate tax:
exemption. *Real Property,* Tax. *Contract,* Municipality. *Municipal Corporations,* Contracts. *Constitutional Law,* Equal protection of laws.

In civil actions brought by the owners of low-to-moderate income housing
developments governed by G. L. c. 121A, the judge correctly granted summary judgment in favor of the defendants (a city and its redevelopment
authority) on the ground that the plaintiffs were bound by their contracts
created under G. L. c. 121A, § 6A, even though the plaintiffs were paying
more to the city pursuant to those contracts than if they were not exempted
from local property taxes assessed pursuant to G. L. c. 59, because G. L.
c. 121A does not contain language to the effect that the financial burden
created under §§ 6A and 10 of that chapter must always be less than or
equal to taxation amounts otherwise required under G. L. c. 59 [816-819];
for the same reason, the judge did not err in granting summary judgment
in favor of the defendants on the plaintiffs' common-law contract claims
[819].

The payments made by the owners of low-to-moderate income housing
developments in lieu of taxes, pursuant to contracts that the owners negotiated with a city and its redevelopment authority under G. L. c. 121A,
§ 6A, did not constitute an unconstitutional tax that denied the owners the
equal protection of the laws, because the payments were contractually
agreed upon amounts, not taxes. [820-821]

CIVIL ACTIONS commenced in the Superior Court Department
on April 14, 1999.

After consolidation, the cases were heard by *S. Jane Haggerty*, J., on motions for summary judgment, and separate and
final judgments were entered by *Margaret R. Hinkle*, J.

The Supreme Judicial Court granted an application for direct
appellate review.

[1] Boston Redevelopment Authority.

[2] Marcus Garvey Apartments *vs*. City of Boston & another.

*Janet Steckel Lundberg* (*Richard M. Bluestein & Edward A. Broderick* with her) for Anderson Street Associates.

*Saul A. Schapiro* (*Nina F. Lempert* with him) for Boston Redevelopment Authority.

*Gregory B. Franks*, for city of Boston, was present but did not argue.

*Deborah L. Thaxter & Jonathan Sablone*, for Massachusetts Affordable Housing Alliance, amicus curiae, submitted a brief.

IRELAND, J. This case raises an issue of first impression: whether G. L. c. 121A contains an implicit cap on the amount developers must pay a city or town in lieu of taxes pursuant to their urban redevelopment contracts. We granted the plaintiffs' application for direct appellate review to consider whether a Superior Court judge erred in granting summary judgment to the defendants, holding that the plaintiffs are bound by their contracts created under G. L. c. 121A, § 6A, even though they are paying more than they would if they were not exempted from property taxes assessed pursuant to G. L. c. 59.[3] Because we conclude that G. L. c. 121A does not contain language to the effect that the financial burden created under §§ 6A and 10 must always be less than or equal to taxation amounts otherwise required under G. L. c. 59, we affirm the judgment.

*Facts and Procedural Background.*

We begin by briefly discussing the general statutory scheme of G. L. c. 121A. Designed to eliminate conditions that cannot be alleviated by the ordinary operation of the real estate market, G. L. c. 121A encourages private developers to foster urban redevelopment projects. G. L. c. 121A, § 2. A developer initiates and designs the project before applying for approval from the appropriate government agencies. G. L. c. 121A, §§ 5, 6. Under G. L. c. 121A, § 10, a developer is exempt from ordinary real estate and property taxes under G. L. c. 59, but instead pays a statutory excise. Pursuant to G. L. c. 121A, § 6A, the developer of a redevelopment project must enter into a written contract with the city or town, agreeing to be bound by the provisions of the statute. Additionally, § 6A allows for a

---

[3]We acknowledge the amicus brief submitted by the Massachusetts Affordable Housing Alliance.

developer to pay an amount additional to the statutory excise. The developer suggests this amount in the initial application, as an incentive to be chosen for the project, and it then becomes part of the contract.

There are no material facts in dispute. We take our facts from the judge's memorandum of decision, supplemented by undisputed facts in the record. The plaintiffs, Anderson Street Associates (Anderson) and Marcus Garvey Apartments (Garvey), are owners of low-to-moderate income housing developments governed by G. L. c. 121A. The defendants are the city of Boston (city) and the Boston Redevelopment Authority (authority), a public body originally organized under G. L. c. 121, § 26QQ, a precursor statute to G. L. c. 121B, § 4, and an "urban renewal agency" pursuant to G. L. c. 121B, § 46.

In March, 1978, pursuant to G. L. c. 121A, § 6A, Anderson entered into a written contract with the city, agreeing to be bound by the provisions of G. L. c. 121A. Garvey entered into a similar written contract in July, 1979. The contracts, which by the plaintiffs' choice have forty-year terms, obligate the plaintiffs to carry out the projects in accordance with the statute, the terms required by the city, and the regulatory agreements into which they entered under G. L. c. 121A, § 18C. The contracts require the plaintiffs to pay the Commonwealth an "urban redevelopment excise tax" mandated by a formula in G. L. c. 121A, § 10.[4] Each contract also sets forth an additional forty-year § 6A payment based on varying percentages of the project's gross rental collections.[5] The additional contractual payments must be made only if they exceed the excise required under § 10. Because of their statutory exemption from State

---

[4] The excise imposed by G. L. c. 121A, § 10, is the sum of an amount equal to five per cent of the corporations' gross income from all sources and an amount equal to ten dollars per thousand on the fair market value of the property as determined on January 1 of the year in which the excise becomes payable.

[5] The Anderson percentages are now twenty-three per cent of the gross market rate residential collections, twenty-five per cent of the gross commercial rent collections, and a percentage of the subsidized residential rents calculated on a described tax-based analysis, not to exceed twenty per cent of the gross subsidized rent collections (including both tenant and subsidy payments), or thirteen per cent of such collections if the United States Depart-

and local taxation under G. L. c. 121A, § 10, the plaintiffs received preferential tax treatment on entering into these § 6A agreements, as the amounts owed under § 10 and the terms of the § 6A agreements were less than the amount of taxes that would otherwise have been owed.

However, at some point following the enactment of Proposition 2½ in 1980 (G. L. c. 59, § 21C, inserted by St. 1980, c. 580, § 1), which limited property tax increases to two and one-half per cent of the previous year's tax revenue based on full and fair cash value, the plaintiffs' G. L. c. 121A payments exceeded the payments required under G. L. c. 59.[6] The plaintiffs made their annual payments to the city in accordance with the terms of their contracts until at least 1996. Beginning in 1996, the plaintiffs attempted to persuade city officials to address the significant gap between their payments and the payments they would be making if they were subject to G. L. c. 59 instead of G. L. c. 121A. In addition, the plaintiffs sought abatements of their G. L. c. 121A payments for tax years 1996, 1997, and 1998, arguing that their payments were disproportionate, unreasonable, and unconstitutional. The Department of Revenue (department) denied these requests on the ground that the plaintiffs' claims related to an underlying constitutional question on which the department lacks authority to render a decision. The plaintiffs appealed to the Appellate Tax Board, which has not taken any action in part due to this litigation.

In April, 1999, Anderson and Garvey filed virtually identical complaints against the city and the authority, asserting claims based on common-law principles, public policy and constitutional violations, and requesting declarations that the G. L. c. 121A contracts were unenforceable both prospectively and

ment of Housing and Urban Development (HUD) does not fund the subsidies.

The Garvey percentages are now thirty per cent of the gross commercial income and a percentage of the residential rents calculated on a described tax-based analysis, not to exceed fifteen per cent of the gross subsidized rent collections (including both tenant and subsidy payments), or twelve per cent of such collections if HUD does not approve a greater payment in certain circumstances.

[6]The plaintiffs provided data only for the years 1997 through 2001, and it is not clear whether the plaintiffs' G. L. c. 121A payments exceeded tax payments in earlier years.

retroactively. The defendants moved for summary judgment on all counts, which the judge granted.

*Discussion.*[7]

1. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992), citing *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). Because we conclude that the motion judge's rulings on undisputed material facts were correct as a matter of law, we affirm the judgments of the Superior Court.

2. *Interpretation of G. L. c. 121A.* "[T]he primary source of the insight into the intent of the Legislature is the language of the statute." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983). "Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). Accord *ROPT Ltd. Partnership* v. *Katin*, 431 Mass. 601, 603 (2000); *Weitzel* v. *Travelers Ins. Cos.*, 417 Mass. 149, 153 (1994); *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, *supra* at 537. Absent a clear indication to the contrary, statutory language is to be given its "ordinary lexical meaning." *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 176 (1981). "While a court must normally follow the plain language of a statute, it need not adhere strictly to the statutory words if to do so would lead to an absurd result or contravene the clear intent of the Legislature." *Commonwealth* v. *Rahim*, 441 Mass. 273, 278 (2004). Contrary to the plaintiffs' argument, the result in this case is far from "absurd."

General Laws c. 121A, § 10, provides in relevant part that

---

[7]We acknowledge, but need not discuss, all of the plaintiffs' arguments. Moreover, we do not address arguments made without citation to authority. *Zora* v. *State Ethics Comm'n*, 415 Mass 640, 642 n.3 (1993), and cases cited.

urban redevelopment corporations "shall be exempt from taxation and from betterments and special assessments." However, G. L. c. 121A, § 6A, provides that "[n]othing in [§ 10] shall prevent such contract from further providing for such corporation to pay to the city or town . . . such specific or ascertainable amount in addition to the excise prescribed by [§ 10] as may have been stated in the application." Section 6A also provides that such payments in addition to the excise prescribed in § 10 "shall be in lieu of taxes." Contrary to the plaintiffs' arguments, G. L. c. 121A does not provide tax concessions to the developers so that the total tax burden under §§ 6A and 10 will be less than or equal to taxation amounts otherwise required under G. L. c. 59.

To interpret G. L. c. 121A to include a cap on the amount developers must pay would require this court to read words into the statute that are not there.[8] The fact that tax breaks may have been envisioned as part of the incentive for developers to engage in urban redevelopment projects does not equal a guaranty that the statutory payments would always be less than or equal to local property taxes. Had the Legislature intended G. L. c. 121A to guarantee tax concessions to be permanent, it could have included statutory language to that effect. It has done so elsewhere. For example, G. L. c. 121C, § 9, dealing with economic development, exempts corporations from taxes, betterments, and special assessments, requiring instead that the corporations pay, in lieu of taxes, a sum determined by the municipality; however, such sum may not exceed "the amount that would be levied at the then current tax rate." *Id.*[9]

Similarly, in G. L. c. 121A, § 15, the Legislature required ad-

---

[8] The plaintiffs' argument that the statement "in lieu of taxes" is a term of art that means less than or equal to actual taxes is without merit. The statutes and case relied on by the plaintiffs do not support this argument. Moreover, we were unable to find any authority to support this argument. Rather, every statute or case mentioning this phrase or terminology either explicitly stated in a definition that payments in lieu of taxes must not exceed regular tax payments or was silent on the issue. Neither § 1 nor § 6A of G. L. c. 121A defines "in lieu of taxes," and the statute is otherwise silent as to its meaning.

[9] General Laws c. 121C, § 9, was inserted by St. 1972, c. 725. The Legislature amended G. L. c. 121A, § 10, numerous times between 1975 and 1978. We must presume that the Legislature was aware of pre-existing law, *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 546 (1976), including G. L.

ditional payments to be made to a municipality if the gross receipts exceeded the funds needed to maintain the project, up to an amount that the developer would have paid if it was not exempt from ordinary taxes.[10] Thus, § 15 includes a statutory cap on the excess payments a developer must pay. The Legislature could have chosen to include a similar cap in either § 6A or § 10, but it did not do so.

Although our previous cases state that tax concessions were envisioned, it is undisputed that the plaintiffs received such tax concessions after signing the agreements. The fact that the concessions did not continue for the entire term of these contracts does not violate them.

Moreover, the plaintiffs' contracts under § 6A are unambiguous and must be enforced in accordance with their plain terms. *Freelander* v. *G. & K. Realty Corp.*, 357 Mass. 512, 515-516 (1970). The terms of the contracts are clear in that they require annual payments based on specific and straightforward formulas under § 10 and the additional monies the plaintiffs contracted to pay under § 6A. There is no basis for arguing that the clear contractual terms of the contracts cannot be enforced. See *Opinion of the Justices*, 341 Mass. 760, 787 (1960) (because additional payments under § 6A are obtained by contract, anyone undertaking project has "no ground for complaint"). In negotiating their contracts, the plaintiffs could have insisted on a provision assuring that their payments under the contract would never exceed local property taxes. They did not do so and cannot now attempt to insert or imply such a provision.

Although the calculations of the plaintiffs' payments have

c. 121C, § 9. Although the Legislature could have included a similar cap on the § 10 excise payments or the "in lieu of tax" payments in § 6A, it has not done so.   .

[10]General Laws c. 121A, § 15, provides in relevant part:

"Should the gross receipts . . . exceed [various expenses,] the amount remaining shall be applied to the payment to the city . . . of the amount, if any, by which the taxes would have been assessed upon the real estate and tangible personal property of the corporation in such year if [they] had not been exempt from taxation, exceeded the excise paid by such corporation and distributed to [the] city . . . in such year under [G. L. c. 121A, § 10]."

remained unchanged since the inception of the agreements, the plaintiffs argue that, since the enactment of Proposition 2½, their payments have become unfavorable because developers who do not operate under G. L. c. 121A are paying less in taxes under G. L. c. 59. However, the parties to these negotiated contracts were not unsophisticated and there is no suggestion that the plaintiffs were not represented by counsel. Indeed, the plaintiffs entered into these contracts with their eyes open and were the ones who offered the additional payments under § 6A in their initial applications. In these circumstances, where sophisticated parties choose to embody their agreement in a carefully crafted document, they are entitled to and should be held to the language they chose. Nothing in Proposition 2½ has changed the amount that the plaintiffs agreed to pay. Rather, in light of Proposition 2½, the contract "price" they agreed to does not look as favorable as it did when the contracts were signed. We cannot now, with hindsight, undo the contracts merely because the contract formulas do not presently give the plaintiffs the favorable treatment they anticipated.

The plaintiffs argue that our interpretation of G. L. c. 121A will deter developers from entering into urban redevelopment contracts with municipalities. However, this argument is without merit, as any new project will involve its own negotiation and the municipality will need to offer a deal that provides sufficient incentive to the potential developer. Thus, any contract created pursuant to § 6A will reflect a deal beneficial to the public and the developer. If the § 10 formula has become onerous because of the passage of Proposition 2½, it is the responsibility of the Legislature to address the issue, not the court. Moreover, we disagree with the notion that holding parties to their contracts violates public policy, particularly in this case where the plaintiffs will own the projects debt-free in fifteen years.

3. *Common-law contract theories.* The plaintiffs assert that the judge also erred in granting summary judgment in favor of the defendants on the plaintiffs' common-law contract claims. There was no error because the common-law claims are based on the assumption that the Legislature clearly intended G. L. c. 121A to provide tax benefits throughout the forty-year commitment.

4. *Constitutionality of §§ 6A and 10 payments.* The plaintiffs further argue that their payments in lieu of taxes constitute an unconstitutional tax because they impose unreasonable, disproportionate, and unequal taxation on them, claiming that there is no rational or reasonable justification for charging them double what they would pay under G. L. c. 59. However, this argument is without merit, as the money owed under G. L. c. 121A, § 6A, is not a tax; rather, it is a contractually agreed upon amount in lieu of taxes.[11] Moreover, as noted above, because the plaintiffs voluntarily contracted to make additional payments under § 6A, they have no basis for arguing that the clear contractual terms of the § 6A contracts cannot be enforced. *Opinion of the Justices, supra.*

In any event, our previous cases have upheld the constitutionality of the G. L. c. 121A payments on the ground that the public interest served by urban redevelopment justifies the separate classification and treatment for tax purposes. *Dodge* v. *Prudential Ins. Co.,* 343 Mass. 375, 383-384 (1961); *Opinion of the Justices, supra* at 778; *Opinion of the Justices,* 334 Mass. 760, 763 (1956). There has been no material change to the statute itself that requires us to take a second look at its constitutionality. We agree with the motion judge that the fact that the G. L. c. 121A tax concessions ultimately were not advantageous for the entire term of the contract does not make the taxation scheme unconstitutional.

The plaintiffs further argue that the city's failure to renegotiate with them violates their right to equal protection because the city has renegotiated with other G. L. c. 121A developers.[12] For the purposes of this opinion, we assume, without deciding, that the plaintiffs raised this claim in their complaints. However, because we conclude that there is no unequal tax treatment, we affirm the judgment below. Although the defendants have agreed

---

[11]The plaintiffs conceded at oral argument that the additional payments in lieu of taxes to which they agreed pursuant to G. L. c. 121A, § 6A, are the real issue, not the formula under G. L. c. 121A, § 10.

[12]"[F]or the purpose of equal protection analysis, [the] standard of review under the cognate provisions of the Massachusetts [Constitution] is the same as under the Fourteenth Amendment to the Federal Constitution." *Opinion of the Justices,* 408 Mass. 1215, 1223 (1990), quoting *Dickerson* v. *Attorney Gen.,* 396 Mass. 740, 743 (1986).

to revise the G. L. c. 121A contracts of other developers, no law requires this; rather, as the defendants argue, they are entitled to decide whether to modify a contract based on whether they determine that modification would be in the public interest in a particular case. *Lafayette Place Assocs.* v. *Boston Redevelopment Auth.*, 427 Mass. 509, 525-526 (1998), cert. denied, 525 U.S. 1177 (1999).

Equal protection claims will succeed only if the decision to treat the plaintiffs differently from those similarly situated is wholly "arbitrary or irrational." *Wojcik* v. *Massachusetts State Lottery Comm'n*, 300 F.3d 92, 104 (1st Cir. 2002), quoting *Maine Cent. R.R.* v. *Brotherhood Maintenance of Way Employees*, 813 F.2d 484, 492 (1st Cir.), cert. denied, 484 U.S. 825 (1987). The plaintiffs failed to put forth any specific facts to support the assertion that they were similarly situated to the other G. L. c. 121A developers that renegotiated their contracts with the defendants or that the renegotiations were arbitrary. In fact, the evidence indicates that the defendants renegotiated with developers based on their projects' needs. Indeed, despite being questioned repeatedly at oral argument, the plaintiffs were unable to articulate a specific hardship the project would suffer if their contracts were not modified. Thus, the plaintiffs' equal protection claims cannot succeed.

*Conclusion.*

For the reasons set forth above, we conclude that G. L. c. 121A does not include a cap on payments requiring that the tax burden under G. L. c. 121A, §§ 6A and 10, must always be less than or equal to taxation amounts otherwise required under G. L. c. 59.

*Judgments affirmed.*