# Pamela Carter *vs.* Lynn Housing Authority.

No. 05-P-171.

Essex. November 9, 2005. - April 14, 2006.

Present: Duffly, Cypher, & Kantrowitz, JJ.

Further appellate review granted, 447 Mass. 1104 (2006).

*Practice, Civil,* Summary judgment. *Housing Authority. Administrative Law,* Hearing, Regulations. *Due Process of Law,* Hearing.

Statement of the standard of review of an order of a trial court judge granting or denying summary judgment. [122]

Discussion of the federal regulations addressing the family obligations of a tenant participating in the federal housing choice voucher program. [123]

In an action brought in Housing Court by a tenant against a public housing authority (authority), challenging the authority's termination of the tenant's federal rent subsidy assistance payments, the judge erred in granting summary judgment in favor of the tenant, where the termination letter sent by the authority sufficiently placed the tenant on notice of the reason for the decision to terminate her benefits (i.e., causing damage "beyond reasonable wear and tear" to her apartment); where there was no error or abuse of discretion in the decision of the authority's hearing officer upholding the termination of the plaintiff's benefits; and where there were no mitigating circumstances for the hearing officer to consider a lesser sanction. [123-126]. Duffly, J., dissenting.

Civil action commenced in the Northeast Division of the Housing Court Department on May 28, 2003.

The case was heard by *David D. Kerman,* J., on motions for summary judgment.

*Webb F. Primason* for the defendant.

*Jennifer G. Hayden* (*James Breslauer* with her) for the plaintiff.

Kantrowitz, J. The defendant, Lynn Housing Authority (LHA), appeals from a grant of summary judgment in the Housing Court in favor of the plaintiff, Pamela Carter, reversing the

LHA's termination of Carter's section 8 rent subsidy assistance payments.[1] We agree with the defendant and reverse.

The LHA raises several arguments on appeal, claiming that (1) the Housing Court judge erred by holding that the LHA's termination of Carter's benefits was incurably defective because neither the termination letter nor the hearing officer's written decision recited that all of the factors required to be considered by the applicable regulations were actually considered or that a sanction less than termination was actually considered; (2) the judge erred by holding that the summary judgment record established that the LHA's termination of Carter was an abuse of discretion; and (3) the judge improperly relied upon an unreported Federal District Court case from the Northern District of Illinois.

*Facts.* On or about March 1, 2000, Carter and her two children, then ages fourteen and eighteen, moved into apartment no. 2 at 20 Wyman Street in Lynn, pursuant to a lease she entered into with the owner of the property, Robert Ryan. Carter held a section 8 voucher administered by the LHA, and the remainder of her rent was paid pursuant to a contract between Ryan and the LHA. Prior to Carter's occupancy of the apartment, and again on or about April 1, 2001, and February 26, 2002, the apartment was inspected by an LHA inspector, as required by 42 U.S.C. § 1437f(o)(8)(C). It was found to be free from violations of the housing quality standards (HQS), as established by the Department of Housing and Urban Development (HUD) pursuant to 42 U.S.C. § 1437f(o)(8)(B)[2] and 24

---

[1]For background on the Housing Choice Voucher ("section 8") Program, see *Wojcik* v. *Lynn Hous. Authy.*, *ante* 103, 103 n.2 (2006), also decided today. At the outset, we note the significant difference between the two cases. In *Wojcik*, the LHA seeks to void the decision of its hearing officer; here, the LHA seeks to have the hearing officer's decision affirmed.

[2]Section 1437(f)(o)(8)(B) provides:

> "The housing quality standards under this subparagraph are standards for safe and habitable housing established —
>
> "(i) by the Secretary for purposes of this subsection; or
>
> "(ii) by local housing codes or by codes adopted by public housing agencies that —

C.F.R. § 982.401.[3]

The record is unclear as to why, in early 2002, Ryan brought a summary process action against Carter in the Housing Court. What is known is that on June 26, 2002, the parties entered into an agreement for judgment signed by Carter, Ryan, and the court's housing specialist. The parties mutually agreed to terminate the existing lease, and Ryan agreed to return Carter's security deposit by July 5, 2002, and to return to her $1,005 in rent overcharge payments; Carter, in turn, agreed to vacate the apartment on or before September 2, 2002. In addition, each party waived all then-existing claims against the other with prejudice. On or about September 2, 2002, Carter and one of her children, then age seventeen, moved to a new apartment in Lynn.

On or about November 26, 2002, Ryan filed suit against Carter, claiming that Carter had caused substantial damage to the apartment, and seeking $2,000. On February 12, 2003, after conducting a hearing in which she viewed a video of the apartment provided by Ryan, the Housing Court clerk-magistrate found for Ryan and granted him $1,440 in damages for waste exceeding normal wear and tear. Judgment entered on February 13, 2003. This decision apparently was not appealed.

On April 11, 2003, the LHA formally notified Carter of its decision to terminate her section 8 subsidy, effective May 31, 2003.[4] Carter then sought review of the LHA's decision. After a hearing on May 8, 2003, during which Carter presented wit-

---

"(I)  meet or exceed housing quality standards, except that the Secretary may waive the requirement under this subclause to significantly increase access to affordable housing and to expand housing opportunities for families assisted under this subsection, except where such waiver could adversely affect the health or safety of families assisted under this subsection; and

"(II) do not severely restrict housing choice[.]"

[3]Section 982.401 addresses in specific detail the requirements an apartment must meet to fulfill the housing quality standards. It provides, for example, that "[t]he exterior doors of the dwelling unit must be lockable," 24 C.F.R. § 982.401(d)(2)(iv), and that "[e]ach room must have adequate natural or artificial illumination to permit normal indoor activities and to support the health and safety of occupants." 24 C.F.R. § 982.401(f)(1).

[4]The termination letter cited the language of 24 C.F.R. § 982.551(c) and

nesses and evidence on her behalf, the hearing officer affirmed the LHA's decision to terminate Carter's section 8 assistance.[5] In conjunction with cross motions for summary judgment, the LHA provided the affidavit of David Moore, the LHA's rental

§ 982.404(b)(iii) as reasons for termination, stating: "HQS breach caused by family. The family is responsible for an HQS breach caused by the family as described in 982.404(b)(iii). Any family member of the household or guest damages the dwelling unit or premises (damages beyond ordinary wear and tear)."

[5]The submission of evidence at the hearing is governed by 24 C.F.R. § 982.555(e)(5):

> "Evidence. The PHA [public housing agency] and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings."

At the hearing, the judgment against Carter for waste was in evidence. Carter apparently attempted to lessen the impact of that judgment by noting that she had no legal representation at the earlier proceeding. The hearing officer's decision additionally notes Carter's testimony, in which "[s]he denied leaving the apartment in any disrepair or with any damages beyond reasonable wear and tear." Carter also presented the testimony of two witnesses who "vouched for her as someone who constantly cleaned and kept up her unit." A number of exhibits presented by Carter at the termination hearing are listed in the hearing officer's decision, although they do not appear in the record on appeal. It is not clear from their description whether the exhibits would have proved helpful to Carter in arguing her case, and in any event, Carter did not seek to supplement the appellate record with the exhibits.

It is apparent from the hearing officer's decision that he did not credit Carter's testimony denying that she had committed waste. The hearing officer's findings are as follows:

"1. HUD regulations are clear and unequivocal that a family is responsible for a breach caused by the family as described in Section 982.404(b)(iii) (see Section 982.552[b][4][c]).

"2. Section 982.404(b)(iii) says that it is a breach if any member of a household causes damages beyond reasonable wear and tear to a dwelling unit.

"3. There is a court decision against Ms. Carter awarding her former landlord damages in the sum of $1,440.00 *for waste* (emphasis added).

"4. Accordingly, the housing authority proceeding under the relevant HUD regulations has grounds to terminate Ms. Carter's rental subsidy assistance.

"5. In fact, Section 982.404(3) states that if a family has caused such a breach, the housing authority 'must take prompt and vigorous action . . .' and may terminate assistance.

"6. The housing authority has proceeded to terminate rental subsidy assistance and Ms. Carter IS AND IS HEREBY FOUND TO BE TERMINATED."

assistance program manager who terminated Carter's section 8 eligibility.[6] In his affidavit Moore averred that he had determined that Carter and/or her family had "breached their obligations under the rent subsidy program and that the appropriate remedy was to terminate assistance to the family." He further stated that he had "reviewed the facts, and considered the factors set forth in 24 C.F.R. § 982.552(c)(2)(i)."[7]

The motion judge, on summary judgment,[8] concluded that the termination of assistance was not in accordance with 24 C.F.R. § 982.552, because the LHA's decision did not show that it had

---

[6]Carter also submitted affidavits in conjunction with her motion for summary judgment, one of which contained both of the following somewhat contradictory statements: "I did not cause most of the damage alleged in the complaint," and "At the hearing held by the Lynn Housing Authority to terminate my subsidy, I testified that I did not cause the damage . . . ."

[7]Moore's affidavit was not before the hearing officer, and we need not consider it. Moreover, as discussed more fully in *Wojcik, supra,* the HUD regulations are designed to afford the tenant who has received a termination notice a "pretermination" hearing — which occurs after receipt of the notice, but before benefits are actually terminated — that satisfies due process principles. No such opportunity is afforded (or expected) at the first stage, when the initial decision to terminate is made.

[8]The motion judge, at the summary judgment stage, apparently made additional findings of fact based on (a) materials and evidence neither reproduced in the record on appeal nor, apparently, in the record before the hearing officer (e.g., that Carter makes payments of $20 per month to her former landlord on the judgment for waste, and that, apart from the matter at issue, Carter had been a section 8 tenant in good standing for ten years and was in good standing with her present landlord); and (b) the judge's own observations (e.g., "The tenant also is clearly disabled [she has a significant hearing impairment that is obvious to this court]"). As to the latter point, Carter mentions it only in passing in her brief on appeal and makes no argument concerning 24 C.F.R. § 982.552(2)(iv) ("[i]f the family includes a person with disabilities, the PHA decision concerning [termination of benefits] is subject to consideration of reasonable accommodation . . ."). See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Carter's memorandum in support of her motion for summary judgment does not mention her disability, nor does she contend on appeal that she placed the issue before the hearing officer.

We note that, to the extent that the record appendix submitted by the LHA lacked pertinent information, such as the documents that were before the motion judge, Carter's recourse was to settle the record on appeal in the Housing Court, see Mass.R.A.P. 18(b), as amended, 378 Mass. 941 (1979), or to move this court for leave to refer to parts of the record not included in the appendix, see Mass.R.A.P. 18(b), as amended, 417 Mass. 1602 (1994). Carter exercised her options to a limited extent, submitting as a supplemental appendix in her brief her memorandum of law on motion for summary judgment.

properly considered " 'all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure' as required by 24 C.F.R. § 982.552(c)(2)(i)."

In addition, the motion judge stated that "[t]here is also no indication that the LHA considered its other remedies as provided by relevant HUD regulations." The judge ruled that the LHA had abused its discretion in terminating Carter's benefits and ordered that the termination of her section 8 assistance be annulled and that her rent assistance be reinstated.

*Standard of review.* " 'The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). 'An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law.' *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992), citing *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976)." *Anderson St. Assocs.* v. *Boston*, 442 Mass. 812, 816 (2004).

It was error for the judge to engage in fact finding. See note 8, *supra*.[9] "When considering a motion for summary judgment, the judge should not consider the credibility of the witnesses or the weight of the evidence, nor should the judge make findings of fact." *Riley* v. *Presnell*, 409 Mass. 239, 244 (1991), citing *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370 (1982). We also conclude that the judge's rulings on the undisputed material facts were incorrect as matter of law, and we therefore reverse the judgment in favor of Carter and order the entry of judgment for the LHA.

---

[9]If Carter wished to call to the judge's attention mitigating evidence she had submitted to the hearing officer, but which did not appear in his decision, she could have submitted an affidavit to that effect to the judge in conjunction with her motion for summary judgment.

*HUD regulations.* Section 982.551(c) of Title 24 of the Code of Federal Regulations provides that "[t]he family is responsible for an HQS breach caused by the family as described in § 982.404(b)." Section 982.404(b) addresses those family obligations of a section 8 tenant, providing in pertinent part:

> "(1) The family is responsible for a breach of the HQS that is caused by any of the following: . . . (iii) Any member of the household or guest damages the dwelling unit or premises (damages beyond ordinary wear and tear).

> "(2) If an HQS breach caused by the family is life threatening, the family must correct the defect within no more than 24 hours. For other family-caused defects, the family must correct the defect within not more than 30 calendar days . . . .

> "(3) If the family has caused a breach of the HQS, the PHA [Public Housing Authority] must take prompt and vigorous action to enforce the family obligations. The PHA may terminate assistance for the family in accordance with § 982.552."

The termination process is addressed by 24 C.F.R. § 982.552. It provides that: "The PHA may at any time . . . terminate program assistance for a participant, for any of the following grounds: (i) If the family violates any family obligations under the program (see § 982.551)." 24 C.F.R. § 982.552(c)(1).

With regard to the circumstances to be considered, subsection (2) reads:

> "In determining whether to . . . terminate assistance because of action or failure to act by members of the family: (i) The PHA *may* consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure" (emphasis supplied).

24 C.F.R. § 982.552(c)(2)(i).

*Discussion.* On appeal, Carter is not contesting that she

breached the HQS in the apartment at 20 Wyman Street, no. 2. The decision of the Housing Court clerk-magistrate in the earlier case found that Carter had committed waste in the apartment and awarded damages in the amount of $1,440 to the landlord.

The key regulatory provision in this case is 24 C.F.R. § 982.552(c)(2)(i). The motion judge determined that the termination of Carter's section 8 voucher was "not 'in accordance with Sec. 982.552' " because of the LHA's failure to consider all relevant circumstances. While Carter agrees and urges us to interpret the language beginning with "[t]he PHA may consider all relevant circumstances" to mean that the PHA is required to consider all relevant circumstances, the LHA emphasizes that the consideration of these circumstances is within the LHA's discretion.

The "mandatory informal hearing procedure is . . . founded on due process principles." *Wojcik* v. *Lynn Hous. Authy.*, *ante* 103, 109 (2006). The due process requirements are carefully spelled out in the HUD regulations, see *id.* at 109-111, and were satisfied in this case. In accordance with 24 C.F.R. § 982.555(c)(2)(i), the termination letter gave Carter adequate notice of why her benefits were being terminated. And, as required by 24 C.F.R. § 982.555(a)(1)(v), the LHA granted Carter the opportunity for an informal hearing.[10] At this hearing, and pursuant to 24 C.F.R. § 982.555(e)(5), Carter and the LHA were allowed to present evidence. Unlike in *Wojcik, supra,* however, Carter presented no evidence of mitigating circumstances. She simply denied that she had caused any damage beyond ordinary wear and tear. See notes 5 & 6, *supra.* The hearing officer was not required to give credence to her denial that she had committed waste.

The language in 24 C.F.R. § 982.552(c)(2)(i), "[t]he PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of . . . termination of assistance on other family members who were not involved in the action or failure," must be interpreted as

---

[10]Section 982.555(a)(1)(v) provides that an informal hearing is required for "[a] determination to terminate assistance for a participant family because of the family's action or failure to act (see § 982.552)."

vesting with the PHA the discretion as how to utilize, if at all, those factors. Thus, as *Wojcik, supra,* indicates, while a party must be allowed to present evidence on this point, what credence, if any, the PHA chooses to place upon those factors is entirely within its discretion.[11] Here, Carter presented no mitigating evidence to the hearing officer; she merely denied having committed waste in the apartment. While termination of section 8 benefits for breach of the HQS is optional, not mandatory, see note 11, *supra,* Carter presented no evidence to the hearing officer in support of a lesser sanction. The LHA acted within the scope of the HUD regulations when it terminated Carter's section 8 voucher; Carter's termination was in accordance with 24 C.F.R. § 982.552, and the motion judge's ruling to the contrary was error.

It was also improper to rule that the LHA termination letter and the hearing officer's decision should have recited that remedies other than termination had been considered. The hearing officer's decision need only demonstrate that he exercised his discretion. See, e.g., *Lonergan-Gillen* v. *Gillen,* 57 Mass. App. Ct. 746, 749 (2003) ("such consideration [need not] be extensive or formal . . . [but] only . . . conscientious"). As Carter had presented no evidence arguing for a lesser sanction, there were no mitigating circumstances for the hearing officer to consider. Compare *Commonwealth* v. *Adjutant,* 443 Mass. 649, 666 (2005), quoting from *Commonwealth* v. *Boyer,* 400 Mass. 52, 57 (1987) ("[w]here the record shows that the judge has failed to exercise discretion, there exists an error of law requiring reversal"); *Lonergan-Gillen* v. *Gillen, supra,* quoting from *Commonwealth* v. *Edgerly,* 13 Mass. App. Ct. 562, 571 (1982) ("[i]t is one thing to consider [a] right [to make an evidentiary ruling] and exercise it either way, but having been given that right, analogous to discretion, it is the duty of the judge to exercise it, and it is error as a matter of law to refuse

[11]We agree with Carter that, under the HUD regulations, the termination of her benefits was discretionary, not mandatory. See 24 C.F.R. § 982.404(b)(3) ("If the family has caused a breach of the HQS, the PHA . . . may terminate assistance for the family . . ."). We also agree with the LHA in its observation that 24 C.F.R. § 982.552(c)(2)(ii) permits it to consider lesser alternatives. Nevertheless, although the LHA's decision not to implement a lesser sanction may seem harsh, that choice falls within the discretion afforded the LHA under the HUD regulations.

to exercise it"). As for the termination letter, it satisfied the requirements of § 982.555(c)(2)(i) by providing Carter adequate notice of why her benefits were being terminated. Nothing more was required.

As noted above, upon violation of the HQS, the PHA has the discretion to terminate a tenant's section 8 voucher. See § 982.404(b)(3). That authority is not curtailed by the language of 24 C.F.R. § 982.404(b)(2), providing that "[i]f an HQS breach caused by the family is life threatening, the family must correct the defect within no more than 24 hours. For other family-caused defects, the family must correct the defect within no more than 30 calendar days . . . ." This requirement that the apartment be returned to its prior condition by those responsible for the damage stands side by side with and independently of any consequences the PHA may impose on a tenant who caused a breach of the HQS. Any other interpretation would fail to give meaning to 24 C.F.R. § 982.404(b)(3). Furthermore, our reading of 24 C.F.R. § 982.404(b) is underscored by 24 C.F.R. § 982.552(c)(1), which provides that "[t]he PHA may at any time . . . terminate program assistance for a participant . . . (i) [i]f the family violates any family obligations under the program (see § 982.551)." As in 24 C.F.R. § 982.404(b), the PHA's authority to terminate a section 8 housing voucher is again phrased independently of any condition that the tenant repair the damage done.[12]

*Conclusion.* The termination letter sufficiently placed Carter on notice of the reason for the decision to terminate her section 8 benefits. Further, there was no error or abuse of discretion in the hearing officer's decision to uphold the LHA's termination of Carter's benefits. Pursuant to the HUD regulations, causing damage "beyond reasonable wear and tear" is a sufficient reason for termination of section 8 benefits. At her hearing, rather than providing mitigating evidence, Carter denied that

---

[12]Carter also contests the LHA's authority to terminate her section 8 assistance on the grounds that the termination was issued after she had already vacated the apartment, and that a PHA can issue a termination only for an ongoing violation of the HQS. To do so would allow anyone breaching the HQS by damaging the apartment to evade responsibility in conjunction with section 8 eligibility by vacating the apartment before the landlord or the housing authority becomes aware of the problem.

she had committed waste, an assertion the hearing officer was not required to credit.

We recognize that the LHA acted harshly.[13] It did, however, also act permissibly within the bounds of its discretion. If the result is unfair, it is for Congress, not this court, to correct.[14]

The judgment for the plaintiff is reversed, and a new judgment is to enter for the defendant.

*So ordered.*

DUFFLY, J. (dissenting). I dissent because in my view the motion judge correctly ruled that the hearing officer's decision was defective for failing to reflect consideration of "all relevant circumstances" as specified in 24 C.F.R. § 982.552(c)(2)(i). As we held in *Wojcik* v. *Lynn Hous. Authy.*, *ante* 103, 112 (2006):

> "a decision whether to terminate [housing] benefits because of action or inaction of a family member must involve a process in which the affected family at least has an opportunity to present evidence and arguments about circumstances that might move the decision maker to impose a penalty less severe than termination. Thus the hearing officer must hear evidence and find facts relating to 'all relevant circumstances.'"

That the hearing officer has considered such circumstances must be reflected in a written decision setting forth both the

[13]For another example of a harsh result, see *Department of Hous. & Urban Dev.* v. *Rucker*, 535 U.S. 125 (2002) (amendments to Federal statute permit local housing authorities to evict entire households in Federal public housing for drug-related criminal activity of individual household members or guests, including situations in which the tenant did not know about, or could not foresee or control the behavior).

[14]We also agree with the LHA that the Housing Court judge's reliance on *Aguirre* v. *Aurora Hous. Authy.*, 1991 WL 287109 (N.D. Ill. 1991), was misplaced. First, the unpublished decision, stemming from a Federal District Court in another State, is not binding on us. Second, and more significantly, the case stood in a different procedural posture; the court granted the tenant a preliminary injunction enjoining the housing authority from terminating her section 8 benefits because the housing authority failed to provide her a proper pretermination hearing as required under the predecessor to 24 C.F.R. § 982.555(a).

reasons for the decision and his factual determinations. *Id.* at
113-114. See, e.g., *Edgecomb* v. *Housing Authy. of Vernon*, 824
F. Supp. 312, 316 (D. Conn. 1993); *Carter* v. *Olmsted County
Hous. & Redev. Authy.*, 574 N.W.2d 725, 730 (Minn. Ct. App.
1998). The circumstances that may be considered include:

> "all relevant circumstances such as the seriousness of the
> case, the extent of participation or culpability of individual
> family members, mitigating circumstances related to the
> disability of a family member, and the effects of . . .
> termination of assistance on other family members who
> were not involved in the action or failure."

24 C.F.R. § 982.552(c)(2)(i).

The hearing officer's decision here reflects no such consider-
ation, and the appellant, Lynn Housing Authority's (LHA's),
argument in this appeal, in accordance with the position it
maintained in *Wojcik, supra*, fails to acknowledge that the hear-
ing officer has authority to exercise discretion in determining
whether a section 8 tenant's benefits should be terminated.
LHA thus makes no argument that the motion judge erred in
concluding that the hearing officer's decision failed to indicate
that "all relevant circumstances" had been considered, instead
arguing that its own consideration of circumstances, prior to is-
suing the termination notice, sufficed — a view we rejected in
*Wojcik*. See *id.* at 112-113; *ante* at 121 n.7. Neither does LHA
argue that no evidence of mitigating circumstances had been
presented.[1]

Absent such arguments by LHA, there would have been no
reason for Carter, as appellee, to supplement the record on ap-
peal to reflect that this evidence had been presented below. It is
her failure to do so that provides support for the court's view
that Carter presented no evidence of mitigating circumstances to
the hearing officer. See *ante* at 122 n.9. In any case, the record
reflects that Carter — by reference to her poverty and impend-
ing homelessness and assertions that she was not the cause of

---

[1]LHA's sole challenge to the factual basis for the Housing Court decision
was that Carter's "alleged payment of $20 per month to the landlord . . . is
not in the summary judgment record." LHA makes no claim that evidence
that Carter is poor and has a hearing impairment was not in the summary
judgment record and had not been presented to the hearing officer.

any damage — did present evidence of "the effects of . . . termination of assistance on other family members who were not involved in the action or failure."[2]

I do not agree that, on this record, summary judgment in favor of LHA should enter. In its brief, LHA states that, even if the hearing officer was required to consider mitigating factors, "summary judgment for each party should have been denied." I would have granted the requested relief, reversed the judgment, and remanded the matter to the hearing officer for hearing and reconsideration in light of our decision in *Wojcik*.

---

[2]Her affidavit states: "I did not cause the damage . . . . If I lose my subsidy I believe it is unlikely that I will be able to find an apartment that I can afford for myself and my child. I am terrified that we will become homeless." It is undisputed that the decision to terminate benefits was not based on the conclusion that Carter caused the damage but that it was caused, after she and her son had vacated the apartment, by someone in her household.