## Boston Housing Authority *vs.* Daphne Bryant.

No. 98-P-0732.

Suffolk. April 22, 1998. - May 14, 1998.

Present: Kass, Smith, & Jacobs, JJ.

*Landlord and Tenant,* Eviction, Termination of lease. *Summary Process. Larceny. False Pretenses. Housing Authority.*

Where the tenant of a public housing authority committed a criminal offense (larceny by false pretenses) that was not an activity threatening the health, safety, or peaceful enjoyment of public housing tenants or employees as set forth in G. L. c. 121B, § 32, as amended by St. 1995, c. 179, § 5, and in the applicable provisions of the lease, there was no basis for the authority to have commenced an eviction proceeding under that statute and for a judge of the Housing Court to have entered a judgment of possession in favor of the authority. [779-780]

Summary process. Complaint filed in the Boston Division of the Housing Court Department on April 14, 1997.

The case was heard by *Jeffrey M. Winik,* J.

*Robert W. Harnais* for the defendant.

*Maite A. Parsi* for the plaintiff.

Kass, J. Acting under G. L. c. 121B, § 32, and a parallel provision in its lease, the Boston Housing Authority (BHA) brought a summary process action against Daphne Bryant, a tenant. Bryant's offense, which triggered the eviction action against her, was that she had run up credit card charges at two retail stores in the name of a BHA employee. A judge of the Boston Housing Court ruled that Bryant's acts of credit card fraud violated § 8(I)(1) of the lease between the BHA and Bryant and ordered entry of judgment of possession for the BHA. Bryant obtained a stay of execution of the summary process judgment, pending disposition of her appeal, from a single

justice of the Appeals Court.[1] We reverse the judgment of possession in favor of the BHA.

Section 8(I) of the standard printed lease that BHA entered into with Bryant obliges a tenant to:

> "Refrain from engaging in, and forbid any member of Resident's household, any guest, or any other person under Resident's control from engaging in any criminal or illegal activity including:
>
> "(1) Any criminal or other activity which threatens the health, safety, or right to peaceful enjoyment of public housing premises by other residents, or BHA employees, or
>
> "(2) Any drug-related criminal activity on or near BHA property."

Among the thirteen categories of resident obligations that § 8 sets forth, all do not trigger the termination of lease provisions that appear in the next section of the lease. That following section, § 9, limits the criminal conduct that justifies lease termination to that described (in almost identical language) in subparagraphs (1) and (2) of § 8(I). Section 9(B) provides:

> "This lease may not be terminated by BHA except for one of the following reasons:
>
> "  . . .
>
> "8(a) Any criminal or other activity which threatens the health or safety of other residents or BHA employees, or which threatens their rights to peaceful enjoyment of public housing premises, or
>
> (b) Any drug-related criminal activity on or near BHA property."

---

[1]The single justice, in the interest of expedition, permitted the parties to file memoranda of law rather than formal briefs. A substantial portion of the BHA's memorandum is devoted to arguing whether a stay of eviction was warranted. The point of the stay, however, was to allow a full panel to consider the merits of Bryant's appeal, i.e., whether the judgment of possession was valid.

The lease, thus, recognizes that there are crimes sufficiently unrelated to the operation of the BHA's business so that they do not warrant termination of a tenant's lease.

What Bryant had managed to do was to obtain some basic personal information (address, date of birth, license number) from the Registry of Motor Vehicles about Joanne Moore, a BHA property manager. Using that data, Bryant successfully applied for credit cards at a home equipment and building supplies store (Home Depot) and a consumer electronics store (Lechmere Sales). Bryant ran up substantial charges in Moore's name in both stores, but her spree was short-lived. A cashier at the Home Depot store in West Roxbury, who knew Moore, spotted the impersonation and, through a neighbor, alerted Moore, who, in turn, notified the police.

Ordinarily, a public housing authority is obliged to give a tenant who requests it a hearing before commencing eviction proceedings. G. L. c. 121B, § 32. Amendments to that statute enacted by St. 1995, c. 179, § 5, provided that a housing authority could set the summary process machinery in motion without a hearing if the cause for eviction was nonpayment of rent or

> "if there is reason to believe that the tenant or a member of the tenant's household has (1) unlawfully caused serious physical harm . . . (2) threatened to seriously physically harm another . . . (3) destroyed, vandalized or stolen property of a tenant or the housing authority . . . which thereby creates or maintains a serious threat to the health or safety of a tenant or employee of the housing authority . . . (4) on or adjacent to housing property, possessed, carried, or illegally kept a weapon . . . (5) on or adjacent to housing authority property, unlawfully possessed, sold, or possessed with intent to distribute a controlled substance . . . (6) engaged in other criminal conduct which seriously threatened or endangered the health or safety of another tenant, an employee of the housing authority or any other person lawfully on the premises of the housing authority . . . or (7) [uses the premises for prostitution, assignation, illegal gaming, or illegal keeping or sale of alcoholic beverages] . . . ."

G. L. c. 121B, § 32, as amended by St. 1995, c. 179, § 5. Common to the causes enumerated in the statute for dispensing with

the hearing requirement is the idea of breach of the peace. Cf. *Commonwealth* v. *LePore*, 40 Mass. App. Ct. 543, 548 (1996). The acts described in the statute are violent or frequently associated with violence. Causing serious physical harm, destruction of property, unlawful possession of firearms, drug dealing, prostitution, and illegal gaming are activities that are visible within a public housing project and have the potential for depreciating its physical and social environment. It is important that a public housing authority be able to deal with such activity decisively and swiftly to avoid the spread of physical or social decay. See *Spence* v. *Gormley*, 387 Mass. 258, 262-263 (1982); *Spence* v. *O'Brien*, 15 Mass. App. Ct. 489, 494 (1983).

Bryant's crime, larceny by false pretenses, lacks that element of violence, association with violence, or visibility. Indeed, to succeed her crime needed to be invisible and stealthy. Recognizing that, the BHA and the trial judge, in his memorandum of decision, focus on the phrase that appears in the lease and — with slight modification — in several places in the statute: "criminal . . . activity [that] threatens the health, safety, or right to peaceful enjoyment by other residents, or BHA employees." To link the wrongful use of Moore's credit to her health and safety, the judge reasoned thus:

> "Had the defendant's conduct gone undetected for any period of time, Ms. Moore could have faced a situation where her credit card limits would have been exceeded or her credit cut off. Had an emergency arisen where she needed to use her credit (such as to obtain medicine for a sick child late at night) the defendant's illegal conduct would have threatened Ms. Moore's health and safety. It is the threat to health and safety posed by the defendant's conduct that entitles the BHA to terminate the tenancy. The BHA does not have to wait until the defendant's conduct actually causes injury."

The difficulty with this reasoning is that it rests on a chain of conjecture about hypothetical facts. None of these things happened. We do not know that Moore even has a child (we were told at argument that she does not). A legal conclusion should not rest on a foundation of entirely fictitious events. See *Professional Economics, Inc.* v. *Professional Economics Servs., Inc.*, 12 Mass. App. Ct. 70, 72 n.3 (1981); *Alliy* v. *Traveler's Ins. Co.*, 39 Mass. App. Ct. 688, 690 (1996). To be the victim of a

credit card fraud, an embezzlement, or a commercial scam through the mail is profoundly disturbing but does not implicate, in the sense commonly understood, a threat to health and safety.

A housing authority has a duty to operate a public housing project so that it is in sound repair, safe, free of violence and visible asocial conduct. It can also incorporate in its lease provisions that require tenants to respect the rights of other tenants and of housing authority employees. There are provisions in the BHA lease relating to those objectives but the right of peremptory termination of a lease is limited by statute to violations of provisions that forbid crimes that are physically destructive, violent, associated with violence, or visibly asocial. Read in the light of that statute, the lease termination provision is directed at activities which similarly threaten health, safety, or peaceful enjoyment. Bryant's offense was none of those, and she is not subject to eviction on that ground.

*Judgment reversed.*