## Lowell Housing Authority *vs.* George Melendez.

Essex. March 5, 2007. - May 3, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Landlord and Tenant,* Eviction, Termination of lease. *Summary Process. Housing Authority. Armed Assault with Intent to Rob.*

This court resolved an issue arising in a summary process action alleged by the plaintiff housing authority to be moot, where the issue was important, was clearly capable of repetition, and demanded fairness to public housing authorities in the Commonwealth, as well as to their tenants. [35]

A Housing Court judge properly found that the eviction of the defendant from a public housing development in which he resided was not only warranted but compelled under the terms of his lease, where the defendant's criminal activity of assault by means of a dangerous weapon and attempted robbery, perpetrated against a patron at a convenient store located approximately one mile from the housing development, posed a threat to the health, safety, and quiet enjoyment of other public housing tenants forced to live in close proximity to him. [35-41]

Summary process. Complaint filed in the Northeast Division of the Housing Court Department on May 27, 2005.

The case was heard by *David D. Kerman,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark E. Bamford* for the defendant.

*Philip S. Nyman (Kathleen M. O'Hagan* with him) for the plaintiff.

Greaney, J. On May 11, 2005, the defendant, armed with an eight-inch kitchen knife, assaulted and attempted to rob a patron in a convenience store located approximately one mile from the Lowell Housing Authority (LHA) development where he was a tenant.[1] The LHA commenced a summary process action against the defendant under provisions of the lease requiring tenants to

---

[1]The charges against the defendant were dismissed in September, 2005, for failure to prosecute.

refrain from certain criminal activity and authorizing termination by reason of criminal activity "that threatens the health, safety, or right to peaceful enjoyment of any LHA housing development by the other tenants." A judge in the Housing Court awarded the LHA possession. The defendant appealed, claiming, essentially, that the criminal activity alleged did not occur on, or near, any LHA development and, therefore, could not threaten the health, safety, or right to quiet enjoyment of other tenants. A single justice in the Appeals Court stayed the judgment until the appeal could be decided, but the stay since has been vacated based on allegations of further criminal activity of the defendant. We transferred the case to this court on our own motion, and we now affirm the judgment of possession in favor of the LHA.

1. We first address LHA's argument that this appeal is, for all practical purposes, moot. The argument is based on undisputed facts, set forth in the LHA's motion to revoke the stay of execution on the judgment for possession, that, since the time of the trial, the defendant was arrested and charged, among other things, with armed robberies of three different banks. At oral argument, we were told that the defendant currently is serving sentences in Massachusetts, and, on his scheduled release, it is expected thereafter that he will be transported to New Hampshire to face another charge of armed robbery. If, and when, the defendant does return to Massachusetts, the LHA contends, he will, undisputably, be unqualified for public housing assistance due to the seriousness of his crimes. The defendant, not surprisingly, disagrees with the latter contention.

Although the LHA's arguments are persuasive, we nonetheless address the issue raised. The question is an important one that is clearly capable of repetition, and, in fairness to public housing authorities in the Commonwealth, as well as to their tenants, it should be resolved. See *Attorney Gen.* v. *M.C.K., Inc.,* 432 Mass. 546, 552 (2000). We now turn to the merits.

2. Paragraph 3.C of the operable lease requires the tenant:

"To refrain from criminal activity that threatens the health, safety, or right to quiet enjoyment of any LHA housing development by other tenants or any drug-related

criminal activity on or near any LHA housing develop-
ment, engaged in by Resident, any member of the
Resident's household, or any guest or other person under
the Resident's control. A criminal arrest, prosecution or
conviction of the activity described in this paragraph will
not be necessary in order to sustain an eviction or termina-
tion of tenancy for cause under this lease."

Paragraph 7.B.6 provides that the LHA may terminate the
lease at any time for the following reasons:

"[E]ngaging in any criminal activity that threatens the
health, safety, or right to peaceful enjoyment of any LHA
housing development by the other tenants, which is com-
mitted by the Resident, any member of the Resident's
household, or any guest or other person under the
Resident's control."

The judge concluded that the defendant had committed the
crime of armed assault and attempted robbery and further found
that the defendant's "violent criminal act, committed in the
same city, in this case about a mile from the public housing
development where the defendant lives, is near enough to other
public housing residents to threaten their health, safety, and
quiet enjoyment." On the basis of this conclusion, the judge
found that the defendant's eviction was not only warranted but
compelled, and entered judgment for possession in favor of the
LHA.

As has been stated, the judgment was stayed pending the
defendant's appeal. The following month, however, before the
appeal was heard, the LHA filed a motion to revoke the stay
with the single justice of the Appeals Court and, in support of
his motion, filed an affidavit of the property manager of the
defendant's housing development informing the single justice
that (1) the defendant had been arrested for three bank robberies
committed subsequent to his eviction,[2] and (2) that other tenants

---

[2]In one incident, it was reported in the media, the defendant threatened the
use of a bomb. The defendant then departed the scene of the robbery, leaving
a bag purporting to contain the bomb. It appears that the bag contained a cel-
lular telephone battery charger and a book inscribed with the defendant's
name and address. The latter led law enforcement authorities directly to the
defendant and earned him mention on national television. Police officers also

in the housing development, reading of the arrests in local newspapers, had expressed serious concerns for their own safety. The LHA's motion to revoke the stay was allowed, and the defendant subsequently vacated the housing premises.

The defendant does not challenge the judge's findings of fact (as described in the opening sentence of this opinion). He only disputes the judge's conclusion that the facts are sufficient to permit the termination of his lease. The defendant contends that the criminal activity in which he engaged could not threaten the "health, safety, or quiet enjoyment" of other tenants because it took place nearly a mile away from the LHA housing development where he lived. Any threat to the other tenants, according to the defendant, was a physical impossibility. The LHA, on the other hand, takes the position that Congress intended to exclude violent criminals from public housing, a broad intention that is supported by the lease requirements mandated by 42 U.S.C. § 1437d (*l*)(6) (2000), and by the lease provision that termination need not depend on an arrest. The LHA argues that the term "any criminal activity" is broad and that the term "threatens" implies a measure of discretion. We agree with the LHA.

In 1996, Congress enacted 42 U.S.C. § 1437d (*l*)(6) (colloquially, the "one strike and you're out" statute) as an anticrime measure in keeping with Federal policy "to assist States and political subdivisions of the States to remedy the unsafe housing conditions and acute shortage of decent and safe dwellings for low-income families." 42 U.S.C. § 1437 (a)(1)(A) (2000). The statute provides for the eviction of tenants living in housing projects funded by the Federal government, or otherwise receiving Federal housing assistance, if they, or any guest or visitor under their control, engage in certain types of criminal activity on, and in some cases, off, the public housing premises. Section 1437d (*l*)(6) requires:

> "Each public housing agency shall utilize leases which
> . . . provide that any criminal activity that threatens the
> health, safety, or right to peaceful enjoyment of the
> premises by other tenants or any drug-related criminal

were able to identify the defendant through the use of several bank surveillance photographs and his noticeable limp.

activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy."

See 24 C.F.R. § 966.4(f)(12) (2006) (also requiring every public housing lease to contain terms set forth in § 1437d [*l*] [6]).

General Laws c. 121B, § 32, tracks the "one strike and you're out" language. It provides, in relevant part:

"The tenancy of a tenant of a housing authority shall not be terminated without cause and without reasons therefor given to said tenant in writing . . . . A tenant at his request shall be granted a hearing . . . except . . . if there is reason to believe that the tenant or a member of the tenant's household has . . . threatened to seriously physically harm another . . . person lawfully on the premises of the housing authority . . . or (6) engaged in other criminal conduct which seriously threatened or endangered the health or safety of another tenant, an employee of the housing authority or any other person lawfully on the premises of the housing authority . . . ."

The lease provision in this case is in accordance with language contained in both the Federal and the State public housing statutes. Nothing in the lease, or in either statute, restricts the provision of "any criminal activity" to activity that occurs on the premises. Not all criminal activity, however, is cause for termination. The limiting factor is that the criminal activity must "threaten[] the health, safety, or right to peaceful enjoyment" of other tenants. It is significant that, expressly under the lease, and, implicitly, under the statutes, conviction of a crime is not necessary. The "one strike" policy seeks not to punish, but rather to ensure the safety and quiet enjoyment of other tenants.

The judge found that the defendant assaulted and attempted to rob a patron of a nearby convenience store and, further, found that "[i]t requires no stretch of the imagination to conclude that a violent criminal act, committed in the same city, in this case about a mile from the housing development where the defendant lives, is near enough to other public housing residents to threaten their health, safety, and quiet enjoyment." We agree. Beyond the

potential threat presented by the defendant's conduct at the convenience store on May 11, however, continued tenancy at the housing authority by someone capable of such aggressive and violent behavior constituted a real and continuing danger to other tenants. We know little of the circumstances that drove the defendant to commit the armed bank robberies for which he is now imprisoned. There can be no doubt, however, that the defendant's arrests for those crimes further demonstrate his propensity for dangerous criminal behavior. It should not be necessary to wait until someone is hurt to evict a tenant who has engaged in this type of violent conduct toward others. Tenants forced to live in close proximity to such a person would be justified in having serious fear for their own safety and that of family members.

While the locus of the criminal activity is not the determining factor in this case, we do not go so far as to hold that all criminal activity, of whatever nature, is cause for termination of a public housing tenancy. Whether the criminal activity is cause for termination will depend largely on the facts of each case. It is enough to say here that certain criminal activity, such as assault by means of a dangerous weapon and armed robbery, is so physically violent, or associated with violence, that one who engages in it normally would pose a threat to, or reasonably inspire a significant level of fear on the part of, tenants forced to live in close proximity to the offending tenant. In this regard this case is distinguishable from *Boston Hous. Auth.* v. *Bryant*, 44 Mass. App. Ct. 776 (1998), a case where the defendant was evicted, by summary process, under similar lease provisions following her conviction of the crime of credit card fraud. See *id.* at 778. The Appeals Court reversed the judgment of possession in favor of the Boston Housing Authority (BHA), reasoning that the criminal activity engaged in by the defendant was nonviolent and could not, except on a hypothetical basis, threaten anyone's health or safety. See *id.* at 779. The court concluded that peremptory termination under the BHA lease was limited by G. L. c. 121B, § 32,[3] to "violations of provisions that forbid crimes that are physically destructive, violent, associated with

[3] In provisions not relevant to this case, G. L. c. 121B, § 32, also provides

violence, or visibly asocial." *Id.* at 780. The Appeals Court surmised, correctly, that, "[r]ead in the light of that statute, the lease termination provision is directed at activities which similarly threaten health, safety, or peaceful enjoyment." *Id.* Such are the circumstances of this case. The primary concern of public housing authorities is the safety of their tenants. See *Spence* v. *Gormley*, 387 Mass. 258, 270 (1982). It follows that a public housing authority must have the discretion to seek to terminate a lease based on criminal activity, occurring on the premises, or off, that constitutes a threat to public safety. See *id.* at 262. See also *Spence* v. *Reeder*, 382 Mass. 398, 415 (1981) (one object of BHA receivership [after class action litigation of *Perez* v. *Boston Hous. Auth.*, 368 Mass. 333 (1975), appeal dismissed sub nom. *Perez* v. *Bateman*, 423 U.S. 1009 (1980)] was "prevention of crime in the developments and the expeditious removal of criminals from them [in order to] enhance the quality of the available housing"). To hold otherwise would send a message that it is acceptable for persons to commit violent crimes elsewhere and continue to be entitled to live in public housing developments. Tenants of public housing developments, such as those managed by the LHA, represent some of the most needy and vulnerable segments of our population, including low-income families, children, the elderly, and the handicapped. It should not be their fate, to the extent manifestly possible, to live in fear of their neighbors.

In view of what has been said, we need not consider the defendant's argument that he is entitled to be placed in the next

for peremptory summary process:

> "[I]f there is reason to believe that the tenant or a member of the tenant's household has (1) unlawfully caused serious physical harm . . . (2) threatened to seriously physically harm another . . . (3) destroyed, vandalized or stolen property of a tenant or the housing authority . . . which thereby creates or maintains a serious threat to the health or safety of a tenant or employee of the housing authority . . . (4) on or adjacent to housing property, possessed, carried, or illegally kept a weapon . . . (5) on or adjacent to housing authority property, unlawfully possessed, sold, or possessed with intent to distribute a controlled substance . . . or (7) [uses the premises for prostitution, assignation, illegal gaming, or illegal keeping or sale of alcoholic beverages] . . . ."

available housing unit, in accordance with housing regulations. See G. L. c. 121B, § 32. The defendant violated the lease and, therefore, his eviction was warranted.

*Judgment affirmed.*