PAMELA CARTER vs. LYNN HOUSING AUTHORITY.

Essex. November 8, 2007. - February 13, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Municipal Corporations,* Housing authority.

In a civil action brought in Housing Court by a tenant against the defendant
public housing authority after it terminated her Federal rent subsidy as-
sistance payments, the judge properly granted summary judgment in favor
of the tenant, where the defendant's hearing officer, in his brief written
decision terminating the tenant's rent subsidy, failed to make any factual
determinations relating to the individual circumstances of the tenant, and
where the hearing officer failed to recognize that he had discretionary
authority to consider relevant circumstances, including mitigating
circumstances, outlined in applicable regulations. [633-638] IRELAND, J.,
dissenting, with whom SPINA, J., joined.

CIVIL ACTION commenced in the Northeast Division of the
Housing Court Department on May 28, 2003.

The case was heard by *David D. Kerman,* J., on motions for
summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Jennifer G. Hayden (James Breslauer* with her) for the plain-
tiff.

*Webb F. Primason* for the defendant.

*Richard M. Glassman & Thomas P. Murphy,* for Disability
Law Center, amicus curiae, submitted a brief.

MARSHALL, C.J. The plaintiff, Pamela Carter, commenced an
action in the Northeast Division of the Housing Court Depart-
ment against the defendant, Lynn Housing Authority (LHA),
after the LHA terminated her Section 8 rent subsidy assistance.[1]

---

[1]The United States Department of Housing and Urban Development (HUD)
Housing Choice Voucher Program, commonly referred to as "Section 8,"
provides rent subsidies "so eligible families can afford decent, safe and
sanitary housing." 24 C.F.R. § 982.1(a)(1) (2007). The program is "generally
administered by State or local governmental entities called public housing

A judge in the Housing Court allowed the plaintiff's motion for summary judgment, annulled and set aside the termination of her Section 8 rent assistance, and ordered that assistance be reinstated.[2] The LHA appealed, and the Appeals Court, by a divided court, reversed and ordered that judgment enter for the LHA. *Carter* v. *Lynn Hous. Auth.*, 66 Mass. App. Ct. 117, 127 (2006) (*Carter*). We granted the plaintiff's application for further appellate review. After hearing oral argument in March, 2007, the six Justices who heard the case were equally divided in opinion. Pursuant to Mass. R. A. P. 24.1, 416 Mass. 1601 (1994), we issued an order so stating, the effect of which was as if the court had denied the application for further appellate review. We thereafter allowed the plaintiff's petition for rehearing, and the case was reargued in November, 2007.

We agree with the Housing Court judge's conclusion, and the opinion of the dissenting Justice in the Appeals Court, *Carter, supra* at 127 (Duffly, J. dissenting), that the LHA hearing officer who upheld the termination of the plaintiff's Section 8 benefits erred by failing to indicate that he had considered "all relevant circumstances" as specified in 24 C.F.R. § 982.552(c)(2)(i) (2007).[3] We vacate the judgment of the Housing Court and

---

[authorities] (PHA). HUD provides housing assistance funds to the PHA. HUD also provides funds for PHA administration of the programs." *Id.* See *Wojcik* v. *Lynn Hous. Auth.*, 66 Mass. App. Ct. 103, 103 n.2 (2006) (*Wojcik*).

[2] The judge previously had stayed enforcement of the termination decision of the Lynn Housing Authority (LHA) and ordered continuation of the plaintiff's Section 8 payments pending a decision on the merits of the plaintiff's complaint.

[3] Title 24 C.F.R. § 982.552(c)(2)(i) (2007) provides:

"(c) Authority to deny admission or terminate assistance . . . .

"(2) Consideration of circumstances. In determining whether to deny or terminate assistance because of action or failure to act by members of the family:

"(i) The PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure."

remand the case to the hearing officer for further proceedings consistent with this opinion.[4]

1. *Background.* On or about March 1, 2000, the plaintiff and her two children moved into an apartment located at 20 Wyman Street in Lynn. The plaintiff was the holder of a Section 8 rent subsidy housing choice voucher administered by the LHA, and pursuant to a contract between the landlord and the LHA, payment of a rent subsidy was made on the plaintiff's behalf. As required by 42 U.S.C. § 1437f(o)(8) (2000), the apartment was inspected prior to the plaintiff's occupancy, and again on or about April 1, 2001, and February 26, 2002.[5] At all times it was found to be free from violations of the housing quality standards set forth by the United States Department of Housing and Urban Development (HUD) as part of the Section 8 program.

Thereafter, for reasons that are not evident from the record, the plaintiff's landlord, Robert Ryan, commenced a summary process action against her. On June 26, 2002, a written agreement for judgment, signed by the plaintiff, Ryan, and a housing specialist,[6] was filed with the court. By its terms, the plaintiff and Ryan

---

[4] We acknowledge the amicus brief submitted by the Disability Law Center.

[5] Title 42 U.S.C. § 1437f(o)(8) (2006), provides in relevant part:

"(A) In general . . . [f]or each dwelling unit for which a housing assistance payment contract is established under this subsection, the public housing agency shall inspect the unit before any assistance payment is made to determine whether the dwelling unit meets the housing quality standards under subparagraph (B)."

Subparagraph (B), in turn, describes the quality standards "for safe and habitable housing."

Subparagraph (C) and subparagraph (D) provide for inspection of the unit before any assistance payment is made for the unit, and annually thereafter.

[6] Housing specialists, appointed by the First Justice of a particular Housing Court, subject to the approval of the Chief Justice of the Housing Court Department, "shall be knowledgeable in the maintenance, repair, and rehabilitation of dwelling units; the problems of landlord and tenant as they pertain to dwelling units; the types of funds and services available to assist landlords and tenants in the financing and resolution of such problems; the federal and state laws, rules and regulations pertaining to the maintenance, repair and rehabilitation of such units; and the financing and resolution of such problems. The housing specialists shall have such powers and perform such duties as [the] chief justice shall from time to time prescribe." G. L. c. 185C, § 16. Housing specialists often mediate disputes between or among tenants and their

agreed to the mutual termination of the plaintiff's lease. The agreement also provided for the return to the plaintiff of her security deposit, as well as approximately $1,000 in overcharges; that the plaintiff would vacate the apartment by September 2, 2002; and that each party waived any then-existing claims against each other. The plaintiff moved into a new apartment, with one of her children, on or about September 2, 2002. Nearly three months later, her previous landlord, Ryan, commenced a small claims action asserting that after the parties entered into the June, 2002, agreement, the plaintiff caused excessive damage, beyond normal wear and tear, to Ryan's apartment. After a trial, at which the plaintiff did not have legal representation, a Housing Court clerk-magistrate found for Ryan and awarded him damages for "waste" in the amount of $1,440.[7]

After learning of the judgment against the plaintiff, the LHA notified the plaintiff by letter dated April 11, 2003, that it was terminating her Section 8 rent subsidy assistance on the basis that she had violated one of her obligations under the Section 8 program. The letter stated:

"[T]he following are reasons for termination:

"982.551 Obligation of participant.

"(c) *HQS [housing quality standards] Breach caused by family.* The family is responsible for an HQS breach caused by the family as described in [24 C.F.R. §] 982.404(b)(iii) [i.e., when] [a]ny family member of the household or guest damages the dwelling unit or premises (damages beyond ordinary wear and tear)."

The letter also indicated that the plaintiff had ten days within which to request an informal hearing, and that at the time of any such hearing the plaintiff should bring "any written correspondence, documentation that may support your appeal," and provided the address for a legal service agency should the plaintiff require assistance with her appeal.

landlords. H.J. Alperin & L.D. Shubow, Summary of Basic Law § 15.39 (3d ed. 1996).

[7]Pursuant to G. L. c. 221, § 62B, clerks of the Housing Court "also have the title of magistrate" and have certain powers and duties, in addition to those that they have as clerks, as enumerated in G. L. c. 221, § 62C.

The plaintiff duly requested a hearing, which was held on May 8, 2003. At the hearing, according to the hearing officer's decision, the plaintiff, who did not have counsel, presented evidence regarding the condition of the apartment and pointed out that in interrogatories answered by Ryan, apparently as part of the earlier small claims action, Ryan had stated that he had made all repairs, although neither the hearing officer's decision nor the record makes clear the time period to which the plaintiff's evidence refers. Two witnesses also appeared on the plaintiff's behalf, testifying that they had observed how she maintained her apartment and that they knew her to be someone who cleaned and took care of her apartment. In his written decision, which issued on May 16, 2003, the hearing officer made the following "findings," which we repeat here in their entirety:

> "1. HUD regulations are clear and unequivocal that a family is responsible for a breach caused by the family as described in Section 982.404(b)(iii). See Section 982.552(b)(4)(c).
>
> "2. Section 982.404(b)(iii) says that it is a breach if any member of a household causes damages beyond reasonable wear and tear to a dwelling unit.
>
> "3. There is a court decision against [the plaintiff] awarding her former landlord damages in the sum of $1,440.00 for waste.
>
> "4. Accordingly, the housing authority proceeding under the relevant HUD regulations has grounds to terminate [the plaintiff's] rental subsidy assistance.
>
> "5. In fact, Section 982.404(3) states that if a family has caused such a breach, the housing authority 'must take prompt and vigorous action' and may terminate assistance.
>
> "6. The housing authority has proceeded to terminate rental subsidy assistance and [the plaintiff] IS AND IS HEREBY FOUND TO BE TERMINATED."

On May 28, 2003, the plaintiff, now represented by counsel, filed her complaint in the Housing Court appealing from the

decision of the hearing officer. She also requested a stay of the termination of benefits while the action was pending, which (as noted) a Housing Court judge granted, on May 29, 2003.

The plaintiff and the LHA then filed cross motions for summary judgment. In support of her motion, the plaintiff submitted an affidavit in which she stated that when she moved out of the Wyman Street apartment, the apartment was not damaged beyond normal wear and tear, and that after she left, Ryan, her landlord, moved into the apartment. She also stated that at the small claims hearing before the clerk-magistrate, she testified that she had not caused the damage. In support of its own motion for summary judgment, the LHA submitted an affidavit of David Moore, the LHA rental assistance program manager who had made the initial decision to terminate the plaintiff's Section 8 benefits. In his affidavit, Moore stated that prior to sending the plaintiff the April 11, 2003, Section 8 termination letter, he "reviewed the facts, and considered the factors set forth in 24 C.F.R. § 982.552(c)(2)(i)," see note 3, *supra*, and decided that the plaintiff *"and/or her family* had breached their obligations under the rent subsidy program and that the appropriate remedy was to terminate assistance to the family" (emphasis added).[8]

The motion judge concluded that the termination of the plaintiff's benefits was not in accordance with the applicable regulation, 24 C.F.R. § 982.552, because there was no indication in either the program manager's or the hearing officer's decision that the LHA "properly considered 'all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure' as required by 24 C.F.R. § 982.552(c)(2)(i)." He also noted that there was no indication that the LHA considered other remedies, aside from termination. In concluding that imposing the sanction of "outright termination of assistance" constituted an abuse

---

[8]As the Appeals Court noted, Moore's affidavit was not before the hearing officer and need not be considered. *Carter* v. *Lynn Hous. Auth.*, 66 Mass. App. Ct. 117, 121 n.7 (2006) (*Carter*).

of discretion, the motion judge considered nine facts.[9,10] He ordered that the Section 8 assistance be reinstated.

---

[9]The motion judge listed the following nine facts as the basis for his decision:

"1. By their agreement for judgment entered June 26, 2002, in summary process case, Ryan v. Carter, N.E. Hsg. Ct. No. 02-SP-01497, which preceded the small claims case, the parties 'mutual[ly] agreed to terminate the tenancy.' There was no adjudication (and no claim) that the tenancy was terminated for cause or for fault on the part of the tenant.

"2. By the agreement for judgment entered June 26, 2002, the landlord agreed to return the plaintiff's security deposit with interest, plus $1,005.00 in 'fees' that the tenant had paid for the use of her washer and dryer, which 'fees' appear to have been rent overcharge payments received in violation of Section 8 program law and agreements.

"3. The landlord overstated the extent of his waste damages (he claimed $3,980.00 actual damages, reduced to the statutory maximum of $2,000, under the Small Claims Law, G. L. c. 218 § 21; the magistrate awarded $1,400.00 total actual damages).

"4. There was no evidence (and no claim) that the tenant committed active waste or malicious destruction to the property.

"5. Except for the obligation here involved, the tenant has been a Section 8 tenant in good standing for more than ten years.

"6. Except for the uncertainty surrounding her Section 8 status, the tenant is in good standing with her present landlord.

"7. The tenant is extremely impoverished (at the present time she receives only Social Security death benefits; she lost her job as a substitute teacher's aide because she is unable to pay for a telephone).

"8. The tenant also is clearly disabled (she has a significant hearing impairment that is obvious to this court).

"9. Despite her poverty the tenant is now paying $20.00 per month to her previous landlord towards satisfying the waste damage judgment debt obligation."

[10]The Appeals Court criticized the motion judge for making findings of fact in addition to what was in the record. See *Carter, supra* at 122, quoting *Riley* v. *Presnell*, 409 Mass. 239, 244 (1991). The difficulty confronting the judge in this case was the absence of any "record" to speak of: there was no transcript of the informal hearing before the hearing officer, and the hearing officer's "findings" were little more than a summary of the applicable regulations and prior proceedings. See note 16, *infra*. In such circumstances, the housing court judge should not have made findings of fact not in the record, but should have remanded the case to the hearing officer to make the necessary findings.

2. *Discussion.* We review a grant of summary judgment to determine whether there is any "genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). Here, where we are considering the termination of a housing benefit, which is a "protected interest," *Spence* v. *Gormley*, 387 Mass. 258, 275 (1982), judicial review of the decision to terminate "has long been framed as a claim for deprivation of a vested property interest without due process of law." *Wojcik* v. *Lynn Hous. Auth.*, 66 Mass. App. Ct. 103, 105 n.4 (2006) (*Wojcik*), and cases cited.

Pursuant to the regulations governing the Section 8 program, participating families have certain obligations relevant to, among other things, HUD's housing quality standards, or HQS. 24 C.F.R. § 982.404(b). The family is responsible for any breach of the HQS that is caused when "[a]ny member of the household or guest damages the dwelling unit or premises (damages beyond ordinary wear and tear)." 24 C.F.R. § 982.404(b)(1)(iii). When a family does cause such a breach, a public housing authority (PHA) has the authority to terminate Section 8 assistance. 24 C.F.R. § 982.552(c)(1)(i).[11] The regulations further state that in determining whether to terminate assistance, the PHA "may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. § 982.552(c)(2)(i).

Once a PHA — in this case the LHA — makes "a determination to terminate assistance for a participant family because of

---

[11]Title 24 C.F.R. § 982.552(c)(1)(i) provides, in relevant part:

"(c) Authority to deny admission or terminate assistance . . . .

"(1) Grounds for denial or termination of assistance. The PHA may at any time . . . terminate program assistance for a participant, for any of the following grounds:

"(i) If the family violates any family obligations under the program . . . ."

the family's action or failure to act," the housing authority "must" give the family an opportunity for a hearing. 24 C.F.R. § 982.555(a)(1)(v).[12] Following the hearing, the person who conducts the hearing — in this case the hearing officer — "must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).[13]

The central issue in this case is whether the LHA complied with the applicable regulations. An experienced judge in the Housing Court concluded that the hearing officer erred by failing to indicate that he had considered "all relevant circumstances" as required by 24 C.F.R. § 982.552(c)(2)(i). We agree.[14] As the Appeals Court stated in *Wojcik, supra* at 112, decided the same day as *Carter*:

> "[A] decision whether to terminate benefits because of action or inaction of a family member must involve a process in which the affected family at least has an opportunity to present evidence and arguments about circumstances that might move the decision maker to impose a penalty less severe than termination. Thus the hearing officer *must hear evidence and find facts relating to 'all relevant circumstances'* " (emphasis added).

The record in this case, such as it is, reveals little. The "relevant

---

[12]Title 24 C.F.R. § 982.555(a)(1)(v) provides:

"(a) When hearing is required —

"(1) A PHA must give a participant family an opportunity for an informal hearing to consider whether the following PHA decisions relating to the individual circumstances of a participant family are in accordance with the law, HUD regulations and PHA policies: . . .

"(v) A determination to terminate assistance for a participant family because of the family's action or failure to act (see § 982.552)."

[13]The hearing is to be conducted by an impartial hearing officer, "although that person is designated by the PHA so long as he or she is neither the one whose decision is being challenged nor subordinate to that person." *Wojcik, supra* at 110, citing 24 C.F.R. § 982.555(e)(4).

[14]In this respect we are also in agreement with the opinion expressed by the dissenting Justice of the Appeals Court. *Carter, supra* at 127-127a (Duffly, J., dissenting).

circumstances" as described in 24 C.F.R. § 982.552(c)(2)(i) include mitigating circumstances, in this case the plaintiff's disability (her severe hearing loss); the seriousness of the case, in this case the plaintiff's economic fragility suggesting that the termination of her Section 8 assistance could gravely affect her ability to afford housing; and the effects of termination of assistance on her as a member of the family who may not have been involved in the "waste" of Ryan's apartment. It is apparent that the thrust of the testimony of the plaintiff's witness was to the effect that the plaintiff was not responsible for the "waste" of Ryan's apartment. The hearing officer made no findings on that point, one way or another — he simply summarized what the plaintiff and her witnesses testified to without any indication whether he credited their testimony — leaving a question whether he thought the testimony was even relevant, as it clearly was. Furthermore, while there is no indication in the record that the plaintiff gave testimony of her economic fragility or disability at the hearing, both circumstances were obvious.[15] More important, there is no indication in the hearing officer's brief written decision that he recognized that he had the discretionary authority to consider any of those relevant circumstances under 24 C.F.R. § 982.552(c)(2)(i). See *Lonergan-Gillen* v. *Gillen*, 57 Mass. App. Ct. 746, 749 (2003), quoting *Commonwealth* v. *Edgerly*, 13 Mass. App. Ct. 562, 571 (1952) ("It is one thing to consider [a] right [to make a ruling] and exercise it either way, but having been given that right, analogous to discretion, it is the duty of the judge to exercise it, and it is error as a matter of law to refuse to exercise it"). See also *Commonwealth* v. *Fredette*, 56 Mass. App. Ct. 253, 259 n.10 (2002) ("Failure to exercise discretion is itself an abuse of discretion"). The hearing officer's failure in this regard renders his report fatally defective.

The LHA argues that, while the hearing officer "may" consider

---

[15]The record does *not* establish conclusively that the tenant failed to bring to the attention of the hearing officer these or other potentially relevant mitigating and other circumstances. See *Carter, supra* at 127 n.1 (Duffly, J. dissenting). In any event, the Housing Court judge noted that "[t]he tenant also is clearly disabled (she has a significant hearing impairment that is obvious to this court)," and there is nothing to suggest that the same disability was not obvious to the hearing officer.

"all relevant circumstances," 24 C.F.R. § 982.552(c)(2)(i), he is not required to do so. That assertion misses the mark. It presupposes the predicate issue that forms the crux of this dispute: whether the hearing officer recognized that he had discretionary authority to consider relevant circumstances.

While the hearing is informal, the governing regulation, 24 C.F.R. § 982.555(e)(6), "speaks of a hearing officer making both '[f]actual determinations' and a 'decision.' In particular, it refers to factual determinations relating to 'individual circumstances.' " *Wojcik, supra* at 110-111. Reading 24 C.F.R. § 982.555(e)(6) and § 996.552(c)(2)(i) together, it is clear that, in a case such as this, the decision of a hearing officer must, at a minimum, reflect factual determinations relating to the individual circumstances of the family (based on a preponderance of the evidence at the hearing); demonstrate that he is aware of his discretionary authority under 24 C.F.R. § 982.552(c)(2)(i), to take all relevant circumstances (including mitigated circumstances) into account; and indicate whether he either did or did not choose to exercise that discretion in favor of mitigating the penalty (here termination of Section 8 benefits) in a particular case. See, e.g., *Baldwin* v. *Housing Auth. of Camden*, 278 F. Supp. 2d 365, 371 (D.N.J. 2003).

The LHA's suggestion, then, that there is no requirement that there be "any" factual determination in the written decision is simply not correct. If a hearing officer's decision contains no factual determinations, a reviewing court would be unable to discern whether the hearing officer exercised his discretion in considering the evidence presented.[16] Although it may be that the hearing officer need not provide detailed findings of fact

---

[16]Here, the hearing officer's "findings" consist, in total, of an incomplete reference to the applicable regulations — for instance, his report makes no reference to 24 C.F.R. § 982.552(c)(2)(i) — or to mitigating factors; a statement of the small claims judgment against the tenant; and an affirmation of the LHA's termination decision. These are conclusions of law, not findings of fact. See *Commissioner of Revenue* v. *Lawrence*, 379 Mass. 205, 207 n.4 (1979). In that case, this court noted that "the effectiveness of a court on review is seriously impaired where the hearing officer fails to make clearly distinguishable those findings which are based on the credibility of witnesses and those findings which are conclusions based on application of the law to subsidiary findings. The hearing officer's role in the legal process is an important one, and the drafting of findings must be undertaken with care and

and conclusions of law, here the hearing officer made *no* factual findings of any kind, despite the fact that an inquiry by the hearing officer tracking the language of 24 C.F.R. § 982.552(c)(2)(i)[17] — in conjunction with documentation of his discretionary treatment of the response and of any obvious relevant factors[18] — would suffice to demonstrate that the report comports with the requirements of 24 C.F.R. § 982.552(c)(2)(i) and 24 C.F.R. § 982.555(e)(6). The hearing officer's failure to make any findings, coupled with his failure to indicate any awareness that he was explicitly authorized by HUD to exercise his discretion to take into account relevant circumstances, is contrary to our jurisprudence and cannot be sanctioned. See, e.g., *Lonergan-Gillen* v. *Gillen*, 57 Mass. App. Ct. 746, 749 (2003).[19]

One quarter of a century ago, this court held that, while

precision." *Id.* Regardless of the statutory or regulatory scheme, and regardless whether the hearing is informal or informal, no reviewing court can determine whether a hearing officer has fulfilled his statutory or regulatory obligations in the absence of an adequate record.

[17]While under the HUD regulations, the plaintiff generally bears the burden of presenting evidence of relevant mitigating circumstances, it is reasonable to expect the hearing officer to make inquiry about relevant circumstances that are obviously presented by the situation. For example, the hearing officer might ask, "Are there any other facts that I should know about, particularly those relating to the extent of the participation in the incident of the family member involved, the disability of any family member in the household, or the effects that termination of assistance might have on other family members who weren't involved in this incident?" Such an inquiry by a hearing officer does not place an unworkable burden on him or her. This court has recognized that self-represented litigants must be provided "the opportunity to meaningfully present their cases." Judicial Guidelines for Civil Hearings Involving Self-Represented Litigants § 3.2 (2006) (Self-Represented Litigant Guidelines). Consistent with long-established case law, our Self-Represented Litigant Guidelines provide that judges "may ask questions to elicit general information." *Id.* See, e.g., *McLaughlin* v. *Municipal Court of the Roxbury Dist. of Boston*, 308 Mass. 397, 403 (1941) (no error where judge took charge of small claims procedure, because statute governing those procedures intended to provide a simple, prompt, and informal means disposing of such claims and gave judge wide discretion to manage case).

[18]Examples would be a tenant with a severe hearing loss, one who is blind, or one who is in a wheelchair.

[19]This may be particularly so here where, as noted by the dissenting Justice of the Appeals Court, "LHA makes no claim that evidence that Carter is poor and has a hearing impairment was not in the summary judgment record and had not been presented to the hearing officer." *Carter*, *supra* at 127a n.1 (Duffly, J., dissenting.)

"housing is not within the small circle of interests recognized as 'fundamental,' " "[a] public housing tenancy is of great personal importance to the tenant and her family, who may have nowhere else to turn." *Spence* v. *Gormley*, 387 Mass. 258, 275 (1982). More recently, we noted that public housing tenants "represent some of the most needy and vulnerable segments of our population, including low-income families, children, the elderly, and the handicapped." *Lowell Hous. Auth.* v. *Melendez*, 449 Mass. 34, 40 (2007). It is for these reasons that a tenant's interest in her public housing tenancy "is a protected interest, entitling her to fair procedures before the government can terminate it." *Spence* v. *Gormley, supra.* The record in this case does not establish that the LHA afforded the tenant "fair procedure" before terminating her Section 8 benefits. Hearings such as the one at issue here are nominally and substantively informal, but paradoxically, the stakes are exceptionally high. Vulnerable tenants must not be deprived of protected interests solely on the basis of their lack of familiarity with the intricacies of regulations that, ironically, were designed to protect those very interests.[20] The consequences to a tenant of a hearing officer's adverse decision are profound.

3. *Conclusion.* Judgment shall enter in the Housing Court remanding the matter to the hearing officer with instructions to provide the plaintiff with the opportunity to produce evidence of any relevant circumstances, to acknowledge as potentially mitigating any relevant circumstances, and to indicate affirmatively in his ruling the basis on which he chose to exercise or not his discretion under 24 C.F.R. § 982.552(c)(2)(i). See *Wojcik, supra* at 112-114.

*So ordered.*

IRELAND, J. (dissenting, with whom Spina, J., joins). I agree

---

[20]In discussing the circumstances in which the regulation at issue in this case was promulgated, the court in *Baldwin* v. *Housing Auth. of Camden*, 278 F. Supp. 2d 365, 371 (D.N.J. 2003), noted that "[w]hen HUD recently revised this language, it noted that [housing authorities] *were not required under the law, nor did HUD encourage them, to terminate or deny assistance in every circumstance when a basis for such termination or denial existed*" (emphasis added).

with the Appeals Court's decision to affirm the hearing officer's decision upholding the Lynn Housing Authority's (LHA's) termination of the plaintiff's Section 8 benefits for many of the reasons the court identified. *Carter* v. *Lynn Hous. Auth.*, 66 Mass. App. Ct. 117, 125 (2006). Although the hearing officer did not make specific findings concerning credibility and the weight of evidence presented to him, I conclude that it is implicit in his written decision that he considered evidence of mitigating circumstances presented by the plaintiff who, under the pertinent regulations, bore the burden of producing it. The decision also demonstrates that the hearing officer understood that he had discretionary authority to terminate her assistance. Thus, however harsh the result in this case, I do not agree with the court's conclusion that the hearing officer's written decision in this case was "fatally defective," because the decision does not permit the court to determine whether the hearing officer knew that he had discretionary authority under the pertinent regulations to consider all circumstances in this case. *Ante* at 635.

Although the regulations do not explicitly place the burden of producing evidence of mitigating factors on a tenant, I conclude that it is implied by the provisions of 24 C.F.R § 982.555 (2006), governing the informal hearing. Under § 982.555(e)(5), the family must be given the opportunity to produce evidence and question any witnesses. The family has access to documents in a public housing authority's (PHA's) possession relevant to the hearing. See 24 C.F.R. § 982.555(e)(2)(i). A PHA has the opportunity to conduct discovery and present evidence, but there is no requirement that the PHA itself must present any evidence in its possession that could be considered as a mitigating factor in a tenant's case. See 24 C.F.R. § 982.555. Moreover, there is no provision that mandates that the hearing officer act as an advocate for a tenant or actively elicit information regarding mitigating circumstances. *Id.* Thus, I conclude that the court's suggestion, *ante* at note 17, that a hearing officer should actively elicit evidence about mitigating circumstances from a tenant by asking questions about all possible factors in mitigation and drawing inferences from observations of the tenant that are not based on evidence presented, is not envisioned by the Federal regulatory framework.

See 24 C.F.R. § 982.555.[1] The logical inference from the regulatory language as I read it is that a tenant who wants a hearing officer to consider mitigating circumstances must present them herself.[2]

Here, there is no evidence in the record that the hearing officer or the LHA in this case affirmatively assisted the plaintiff. However, the LHA's termination letter to the plaintiff included a directive to bring correspondence and documents in support of her appeal to the hearing, as well as the address of a legal service agency in Lynn that could provide her with legal assistance.[3] The regulations do not require any additional aid to the tenant.

I do not agree with the court's conclusion that the hearing officer made no factual findings or that his decision did not indicate that he was aware of his discretion to consider relevant circumstances. *Ante* at 637. Citing testimony and specific exhibits presented, he stated in his decision, albeit in a section entitled "The Hearing," instead of "Findings," that at the hearing, the plaintiff "denied leaving the apartment in any disrepair or with any damages beyond reasonable wear and tear" and that she presented evidence "regarding the condition of the apartment (Carter Exhibit 5) and also noted that in the Answers to Interrogatories (Carter Exhibit 6) the landlord stated he had made all repairs." The hearing officer also acknowledged that the plaintiff's two witnesses testified that they knew the plaintiff

---

[1]I do not disagree that a hearing officer may ask such questions. See generally *McLaughlin* v. *Municipal Court of the Roxbury Dist. of Boston*, 308 Mass. 397, 405 (1941). See *ante* at note 17.

[2]Even if a PHA has some knowledge concerning mitigating factors, a tenant is in the best position to provide this evidence. See *Andover Hous. Auth.* v. *Shkolnik*, 443 Mass. 300, 313 (2005) ("Placing the burden on a tenant to acknowledge a disability and the role it may play in a purported lease violation would relieve a housing authority, which may be unable to access adequate information, of that difficult task"). In most cases, and certainly here, a tenant would have information pertaining to these factors that would be unavailable to the PHA or the hearing officer. See 24 C.F.R. § 982.552(c)(2)(i) (listing the seriousness of the case, the extent of participation or culpability of individual family members, the disability of a family member, and the effects of termination of assistance on other family members who were not involved in the action as mitigating factors).

[3]The regulations do not require the termination letter to include information about obtaining legal assistance.

and had observed that she "kept up her unit." I conclude, contrary to the court, *ante* at 635, that the hearing officer's written decision leaves little question that either he did not credit this evidence or he credited the evidence but still concluded that there had been a breach caused by someone for whom the plaintiff was responsible. See 24 C.F.R. § 982.404(b)(1)(iii) (2006) (The family is responsible for a breach of the [housing quality standards] that is caused by . . . [a]ny member of the household or guest . . .").

Certainly it would have been better for the hearing officer to state specifically his findings of credibility and that he weighed the plaintiff's evidence that she did not damage the property against the fact that she had a judgment against her for such damage.[4] However, the credibility and weight he assigned to the evidence were implicit in his decision. See *Adoption of Nancy*, 443 Mass. 512, 516 (2005). The regulations do not require more of the hearing officer. Neither the Federal regulations that create the informal review process for termination of Section 8 benefits, see 24 C.F.R. § 982.555, nor the constitutional mandates of due process require the issuance of a long and detailed decision by a hearing officer. See *Goldberg* v. *Kelly*, 397 U.S. 254, 271 (1970) ("the decision maker should state the reasons for his determination and indicate the evidence he relied on . . . though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law").[5]

Moreover, the plaintiff here does not appear to argue that the

---

[4]I note that, according to the decision of the Housing Court magistrate who found the plaintiff liable for "waste," the landlord provided a videotape "of the property after the tenant had vacated." The record does not indicate the date the videotape was made, although typically dates do appear on videotapes. The judge listed the damages for which the plaintiff was liable as "[l]ight fixtures," "[b]edroom wall repair and papering," "[r]epair of holes in walls," "[d]isconnect gas dryer," "[h]ouse cleaning," "[w]indow and screen replacement/repair," "[h]ole in shower panel," "[s]oap dishes replacement/installation," "[b]athroom sink replacement/installation," and "[d]oor locks and door replacement/installation."

[5]This is unlike *Commissioner of Revenue* v. *Lawrence*, 379 Mass. 205, 207 n.4 (1979), referenced by the court, *ante* at note 16, as support for its conclusion that the hearing officer's report contained deficient factual findings. The *Lawrence* case, which examined the findings of a hearing officer designated by the Civil Service Commission (commission) at a hearing pursuant to G. L. c. 31, § 43, see *id.* at 206, is inapposite here where the hearing officer exer-

hearing officer omitted anything presented by the plaintiff herself
at the hearing from his recital of the evidence, nor does she as-
sert that she wanted to present evidence of her poverty and dis-
ability. A hearing officer cannot refuse to consider relevant mitigat-
ing circumstances presented at the hearing. However, as the
Appeals Court recognized, his actual consideration of the mitigat-
ing factors — the determination of the weight of each factor and
the balancing of those factors against other evidence — is firmly
committed to his discretion. See *Carter* v. *Lynn Hous. Auth.*, 66
Mass. App. Ct. 117, 125 (2006). See also *Davis* v. *Boston Ele-
vated Ry.*, 235 Mass. 482, 496 (1920) (discretion "imports the
exercise of discriminating judgment within the bounds of reason").
If a tenant challenges the decision of a hearing officer in State
court, the court must not "simply substitute [its] judgment for
that of the judge, rather, [it] ask[s] whether the decision in ques-
tion 'rest[s] on whimsy, caprice, or arbitrary or idiosyncratic
notions.' " *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999),
quoting *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass.
639, 642 (1986).

Unlike the court, *ante* at 637, I also conclude that it is evi-
dent that the hearing officer explicitly recognized his discretion
whether to terminate assistance. He stated that there was a court
decision against the plaintiff awarding her former landlord dam-
ages for waste; that the housing authority had grounds to terminate
the plaintiff's assistance because 24 C.F.R. § 982.404(b)(3) "states
that if a family has caused such a breach, the housing authority
'must take prompt and vigorous action . . .' and *may* terminate
assistance" (emphasis added); and that the assistance is "HERE-

cised his authority under an entirely different framework. See 24 C.F.R.
§ 982.555 (2006). Specific factual findings by the hearing officer were
especially important in the *Lawrence* case because of the complex role that
the hearing officer's findings played in the commission's decision. See *Com-
missioner of Revenue* v. *Lawrence, supra* at 210 ("The commission may reject
the conclusions of the hearing officer with respect to guilt or innocence on
certain charges as well as the hearing officer's recommendation as to disposi-
tion, and may rest its own decision on the subsidiary findings, as long as its
decision can be justified on the basis of the accepted findings"). Cf. *Wojcik* v.
*Lynn Hous. Auth.*, 66 Mass. App. Ct. 103, 114 (2006) (stating that under
Federal regulations, a PHA's review of a hearing officer's decision is confined
to whether the decision was contrary to the regulations or Federal, State, or
local law).

BY FOUND TO BE TERMINATED." In addition, as the Appeals Court recognized, the plaintiff did not present any evidence to the hearing officer in support of a lesser sanction. See *Carter v. Lynn Hous. Auth., supra* at 125.[6]

Here, the hearing officer did all that he was required to do based on the evidence presented at the informal hearing. There is no indication in the record, nor does the plaintiff assert, that evidence of her disability and her very low income was presented at the hearing,[7] and therefore the hearing officer did not err by failing to consider them as mitigating circumstances. The testimony the plaintiff presented at the hearing concerning the condition of her apartment, which she points to as another possible mitigating circumstance, was implicitly considered (and rejected)

---

[6]The Federal regulatory provisions cited by the Housing Court judge in support of his conclusion that the hearing officer did not consider other remedies do not apply to the plaintiff's case. Title 24 C.F.R. § 982.404(b)(2) provides that "[i]f [a housing quality standard] breach caused by the family is life threatening, the family must correct the defect within no more than 24 hours. For other family-caused defects, the family must correct the defect within no more than 30 calendar days (or any PHA-approved extension)." The plaintiff testified at the informal hearing that she moved out of the apartment on September 1, 2002. The hearing took place on May 8, 2003. There was no evidence at the hearing that the damage to the apartment had not yet been repaired or that the plaintiff was in a position to repair the damage. Title 24 C.F.R. § 982.552(c)(1)(vi) provides that the PHA "may at any time deny program assistance for an applicant, or terminate program assistance for a participant . . . [i]f the family has not reimbursed any PHA for amounts paid to an owner under a [housing assistance program] contract for rent, damages to the unit, or other amounts owed by the family under the lease." There is no indication from the record that there was evidence presented at the informal hearing that the plaintiff or her family had reimbursed the LHA for the damage to the apartment. In addition, although both provisions set forth sanctions that the hearing officer potentially could have imposed other than termination, neither requires consideration.

[7]There is no transcript or recording of the informal hearing. The only account of the informal hearing that is provided in the record is the hearing officer's account in his decision, which does not mention evidence of the plaintiff's disability or her very low income. Contrary to the contention of the court, *ante* at note 15, Nothing in the record before us suggests that the tenant's disability (her severe hearing loss) and her economic fragility were obvious to the hearing officer. See *id.* Although all recipients of Section 8 assistance, by definition, see 24 C.F.R. § 982.201(b) (2006), have a low income, there was no evidence before the hearing officer that the plaintiff suffered from greater economic fragility than other Section 8 recipients. As stated *supra*, the plaintiff does not argue here that she tried to present such evidence.

by the hearing officer in his decision. The hearing officer determined that the evidence (including the judgment against her) showed that the plaintiff or a family member had damaged the property. There was no evidence that the damage was caused by anyone else, and the fact that it may have been caused by a family member rather than the plaintiff herself would not operate to mitigate the plaintiff's liability for it. See 24 C.F.R. § 982.404(b)(1)(iii). Furthermore, the testimony at the hearing that the plaintiff cites concerning the results of the summary process case, and her suggestion that the settlement of the summary process case could have been a motivating factor in the landlord's claim for damages, did not constitute evidence of a relevant mitigating factor.

Federal law is clear that Congress has vested much power in housing authorities to administer public housing programs. See 42 U.S.C. § 1437(a)(C) (2000) ("It is the policy of the United States . . . to vest in public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration"). This power concerning the termination of Section 8 benefits is set forth explicitly in 24 C.F.R. §§ 982.551 et seq. Whatever my personal views about the power the regulations give to a PHA and the consequences for the plaintiff in this case, I cannot say that the hearing officer did not fulfil his duty under the regulations. Accordingly, I respectfully dissent.