NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-547

CARE AND PROTECTION OF FRANCINE (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this care and protection proceeding, after trial, a judge of the Juvenile Court concluded that the mother was unfit to parent all three of the subject children[2] and that her unfitness was likely to continue into the future.  With respect to Amy and Laura, the two younger children, the judge concluded that it was in their best interests to terminate the mother's parental rights.  She did not terminate the mother's parental rights with respect to Francine, the oldest subject child.

The mother has appealed.  Francine has also appealed, arguing that the mother should not have been found unfit with

_____

[1] Adoption of Amy and Adoption of Laura.  The names of the children are pseudonyms.

[2] The mother has two older children who are not subjects of this proceeding.

respect to her. Amy and Laura defend the finding of unfitness and the termination of the mother's parental rights as to them in its entirety and take no position with respect to the case of Francine.

1. <u>The younger children</u>. It appears that no party claims that the judge erred in finding the mother currently unfit to parent Amy and Laura, the two younger children. The mother, however, asserts that her unfitness was only temporary and that the Department of Children and Families (department) could not show that her unfitness was likely to continue indefinitely into the future because it failed to make reasonable efforts to reunify the family.

We conclude that the judge did not err in concluding the mother was unfit with respect to the two younger children. The judge provided a detailed, eighty-six page, single-spaced decision in this case containing 331 factual findings and forty-three conclusions of law. The facts the judge found reflect clear and convincing evidence supporting the judge's conclusion that the mother is unfit and that her unfitness is likely to continue indefinitely into the future. See <u>Adoption of Ilona</u>, 459 Mass. 53, 60 (2011). We need not recite those facts in full, but note the following findings as examples of the mother's neglect of these two children. When the department

2

gained emergency temporary custody of them, Amy was seven and Laura was six. Laura was not toilet trained. Both children were behind educationally, as neither had been enrolled in school. Laura did not know how to write her name and could not recognize it in writing. The judge found that the mother never enrolled the younger children in school, and, despite the judge's emphasis on the importance of the mother's obtaining the valid identification required to have them enrolled, at the time of trial, the mother had still not obtained a valid identification.

The mother failed to provide adequate housing for the children. She had a subsidized Section 8 apartment, but its condition was terrible. Plumbing issues caused the dishwasher to clog and flood and the sink and toilets to back up, and mold to grow. Notably, the apartment was infested with mice to such a degree that they once ate the wires of the stove, leaving the mother without a stove for several months, and they frequently ate their way into the family's refrigerator, where they then died. The mold and mice issues were so severe the board of health's "hazmat team" came to the apartment.

Of course, we appreciate that the likelihood of obtaining a decent apartment is lower for those in poverty. See Carter v. Lynn Hous. Auth., 450 Mass. 626, 638 (2008), quoting Spence v.

3

Gormley, 387 Mass. 258, 275 (1982) (noting that those in public housing "may have nowhere else to turn").  But in this case, for over four years, with children living in these conditions, the mother never took even the first step toward finding alternate subsidized housing.  Again, this was something that she could not do without a valid identification, and she never obtained an identification.

The mother, at one point, directed the younger children's former foster parent, who was watching them for the weekend, to give one of the children an expired medication that the pharmacy indicated should not be used.  The mother failed to obtain any dental treatment for the children for three years, so that when they left her care, they required massive dental work, including a full mouth dental rehabilitation for Amy, which involved multiple root canals, tooth extractions, and caps.  Laura also received a full mouth dental rehabilitation.

More than once when the mother did have the children in her custody, she sent them to stay with other family members because she was unable or unwilling to care for them.  After the death of her sister, the mother sent the younger children to live with their paternal grandmother, repeatedly extending their stay while allowing Francine to return home.  Roughly nine months after the younger children eventually returned to the mother's

4

home, she again sent them away -- this time, to live with their maternal grandmother -- claiming that she, the mother, was overwhelmed and had too much going on with Francine. The mother left the younger children with the maternal grandmother for nearly two months and never visited them. The children later disclosed that the maternal grandmother hit them, but the mother denied knowing this at the time.

Again, the facts articulated in the judge's findings of fact demonstrate that there is clear and convincing evidence supporting the finding not only of unfitness, but, given how long her unfitness has persisted and her unwillingness or inability to correct it, and the extensive health, educational, and behavioral needs of the children, that the unfitness "is reasonably likely to continue for a prolonged or indeterminate period." Adoption of Ilona, 459 Mass. at 59.

As to termination of parental rights, given the need for stability and permanency in the lives of Amy and Laura if they are to have hope of a successful future, and given the length of time during which the mother failed to remedy her grievous shortcomings, we think the judge did not abuse her discretion nor commit a clear error of law in determining that it was in their best interests to terminate the mother's parental rights. See Adoption of Elena, 446 Mass. 24, 30 (2006).

5

The mother argues that the department did not make reasonable efforts to assist her in addressing her parental shortcomings. As this was not raised below at any point at which the judge could have addressed the claim if it had merit, the claim is waived. See Adoption of West, 97 Mass. App. Ct. 238, 242 (2020). In any event, even in cases where reasonable efforts have not been made, the judge is bound to act in the best interests of the child, see Ilona, 459 Mass. at 61, citing G. L. c. 119, § 29C, and in light of the mother's current circumstances, and with respect to the two younger children, the children's best interests clearly warrant the judge's action.

2. The older child. a. Background. Francine's situation is more complex. Both she and the mother argue that the mother is fit with respect Francine.

While in the mother's care, Francine was educationally behind, lacked seasonally appropriate clothing, and, as with two younger children, lacked safe and clean housing, adequate medical care, and proper dental care. Additionally, the mother inappropriately relied on Francine to care for the younger children, and, on at least one occasion, had Francine stay home from school to watch Amy and Laura. Francine is a kind and loving person who loves her mother and her siblings. The mother, however, has failed utterly to adequately supervise

6

Francine or to place the child's needs above her own.  When Francine was twelve and essentially in charge of the younger children, she took out the trash one day, bringing Amy with her. Francine thought the mother's explanation for forbidding her from visiting a friend in Boston was unreasonable and, with Amy, disappeared.

The mother looked for Francine and Amy and learned that they had been seen at the grocery store across the street.  She went to the grocery store and had an employee call for the children over the loudspeaker, before returning home and calling the police, Francine's friend, and the transit police.  The mother eventually learned that Francine and Amy had gone to Boston, and the mother called her sister and asked her to pick up the children while the mother drove to Boston.  The mother's sister recovered Amy, but not Francine.  Francine eventually called the mother, and the mother was able to locate her and pick her up.  Francine had been at a friend's house, and she admitted that, while there, she smoked marijuana.  After the family returned home, police arrived, and Francine panicked and felt dizzy and sleepy.  As a result, an ambulance was called, and she was taken to the hospital.

While in the mother's care, Francine exhibited concerning sexual behaviors, and the mother often did not respond

7

appropriately.  When Francine was thirteen, there were concerns she may have been pregnant.  While the mother initially agreed to take Francine to the doctor and to look into birth control for her, the mother failed to follow through on these commitments.  Francine continued to run away from the mother's home.  The department harbored concerns that Francine was at risk for commercial sexual exploitation.  On multiple occasions, the mother refused to cooperate with investigations into potential sexual exploitation of Francine.

The department filed this care and protection petition and took emergency temporary custody of all three children, alleging that they were at risk for neglect.

Unfortunately for this family, however, the department failed adequately to provide for the "care and protection," G. L. c. 119, § 26 (b), of Francine.  While in the placements the department chose for her, Francine routinely ran away.  The department remained concerned that Francine was subject to commercial sexual exploitation in its custody beginning when the child was fourteen.  The department was aware that Francine had unexplained access to money, and that older men sent her money through online accounts.  While in the department's custody, Francine repeatedly left the placement in which the department placed her to meet men.  The men provided her with money,

8

alcohol and drugs, and sometimes had sex with her.  During one of these encounters, she was forcibly raped.[3]

When on the run from her placements, Francine sometimes returned to the mother's home.  She kept in touch with the mother, almost always contacting the mother when she went on the run and sometimes informing the mother of her whereabouts.

After roughly eight months and seven placements, the department decided that, employing a tactic known as "harm reduction," it would place Francine with the mother because Francine identified the mother's home as a place where she would feel safe and not feel the need to run.  Unfortunately, while in the mother's care, Francine continued to run away.  On one of these occasions, the mother told Francine that she was not welcome back in the home, and the child returned to the

_____

[3] The premise of the law's willingness to allow the Commonwealth to interfere with the constitutionally protected bonds of family is that it is necessary to do so in some circumstances to protect the child.  See Care & Protection of Robert, 408 Mass. 52, 60 (1990).  The Supreme Judicial Court recently recognized that "[o]nce the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child."  Gotay v. Creen, 495 Mass. 537, 547 (2024), quoting Tamas v. Department of Social & Health Servs., 603 F.3d 833, 846-847 (9th Cir. 2010).  If the government is unable to protect a child, as it was unable to here, the removal of the child from a parent or parents who can do so even marginally better could raise serious constitutional questions.

9

department's care.  After another four months and three additional placements, the department again allowed Francine to return to the mother's care.  After one month with the mother, Francine was arrested and taken into custody by the Department of Youth Services, where she remained for at least some of the course of the care and protection trial.  When she ran, Francine returned sooner if she was at the mother's, and as described above, she remained in contact with the mother, who clearly cared about her.

b.  <u>Analysis</u>.  This unusual set of circumstances provides the backdrop to the appeals by Francine and the mother.  We are faced with a circumstance in which the department argues that the mother is unfit to parent this child, and should therefore lose custody of her, and yet also asserts that the mother offers the best available physical placement for this child.

Francine argues that the department's inability to care for her and its willingness in these circumstances to place her with the mother means that the mother is not only fit, but that the mother is the best possible caretaker for Francine.  We do not agree with Francine on this point.

The conclusion of the department that placement with the mother was, at the time of trial, the best available placement for the child, is well supported.  Unfortunately, this does not

10

mean that the mother is, herself, fit.  The judge's findings demonstrate by clear and convincing evidence that the mother is unfit to provide adequate supervision, to meet Francine's educational needs, to provide safe and stable housing, and to care for Francine.  See Adoption of Ilona, 459 Mass. at 59.  The inability of the department to protect or care for Francine properly does not change that, so we are not in a position to overturn the finding of unfitness.

At the same time, we conclude that the judge acted appropriately in approving the department's formal goal of "reunification" with the mother, rather than "adoption," and its plan, at least as of the time of the trial, to place Francine where she feels "safe and supported":  with her mother.  As the judge noted, "While the Court does not find that this constitutes a superior plan, it nonetheless finds that it is in

11

[Francine's] best interests under the circumstances present in this case."  In these circumstances, we think approval of this plan was appropriate.

<u>Judgment and decrees affirmed</u>.

By the Court (Rubin, Hand & Smyth, JJ.[4]),

Clerk

Entered:  May 16, 2025.

---

[4] The panelists are listed in order of seniority.